**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NUANCE COMMUNICATIONS, INC., | |
| Plaintiff, | |
| v. | Case No.  1:19-CV-11438-MBB |
| OMILIA NATURAL LANGUAGE SOLUTIONS, LTD., | **JURY TRIAL DEMANDED** |
| Defendant | |

## DEFENDANT OMILIA NATURAL LANGUAGE SOLUTIONS, LTD.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR IMPROPER SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION

# TABLE OF CONTENTS

I.    Factual Background ...............................................................................................1

    A.    Ineffective Service in Cyprus Under the Hague Convention.......................1

    B.    Omilia NLS Had No Contacts with Massachusetts on June 28, 2019,
         When the Complaint was Filed....................................................................2

    C.    Omilia NLS's Contacts with the United States............................................3

II.   Legal Standard ......................................................................................................4

III.  The Court Should Dismiss the Complaint Based on Improper Service of Process
      and Lack of Personal Jurisdiction .........................................................................5

    A.    Nuance Did Not Serve Omilia NLS In Accordance with the Hague
         Convention..................................................................................................5

    B.    The Court Lacks Personal Jurisdiction Over Omilia NLS under the
         Massachusetts Long Arm Statute.................................................................8

         1.    Omilia NLS has not purposefully directed activities at residents
               of the District of Massachusetts...................................................9

         2.    Nuance's complaint for patent infringement does not arise out
               of Omilia's contacts with Massachusetts...................................11

         3.    Fairness requires the action be dismissed for Lack of personal
               jurisdiction ................................................................................12

    C.    The Court Lacks Personal Jurisdiction over Omilia NLS under 4(k)(2)...14

IV.   Conclusion ..........................................................................................................15

i

## **TABLE OF AUTHORITIES**

### Cases

*Adelson v. Hananel*,
  652 F.3d 75 (1st Cir. 2011) ............................................................................ 9

*Aly v. Mohegan Council-Boy Scouts of AM.*,
  No. 08-40099-FDS, 2009 U.S. Dist. LEXIS 97254, at *1 (D. Mass. Apr. 20,
  2009) ............................................................................................................... 4

*Boit v. Gar-Tec Prods., Inc.*,
  967 F.2d 671 (1st Cir. 1992) .......................................................................... 5

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,
  444 F.3d 1356 (Fed. Cir. 2006) ................................................................... 12

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ...................................................................................... 13

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*,
  290 F.3d 42 (1st Cir. 2002) ........................................................................ 4, 9

*Elecs. For Imaging, Inc. v. Coyle*,
  340 F.3d 1344 (Fed. Cir. 2003) ................................................................... 12

*Foster-Miller, Inc. v. Babcock & Wilcox Canada*,
  46 F.3d 138 (1st Cir. 1995) ............................................................................ 4

*GAF Bldg. Materials Corp. v. Elk Corp.*,
  90 F.3d 479 (Fed. Cir. 1996) ....................................................................... 10

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP*,
  256 F.3d 548 (7th Cir. 2001) ....................................................................... 14

*Lemus v. Thanh BBQ & Noodle, Inc.*,
  No. 17-cv-01890-NC, 2018 U.S. Dist. LEXIS 114724, at *1, (N.D. Cal. July
  10, 2018) .......................................................................................................... 7

*Leopard Marine & Trading, Ltd. v. Easy Street, Ltd.*,
  No. 15-CV-3064 (JSR), 2015 U.S. Dist. LEXIS 108269, at *1 (S.D.N.Y. Aug.
  6, 2015) ............................................................................................................ 7

*Lopez v. Municipality of Dorado*,
  979 F.2d 885 (1st Cir. 1992) .......................................................................... 4

*Nuance Communications Inc. v. Tellme Networks Inc.*,
  707 F. Supp. 2d 472 (D. Del. 2010) ............................................................. 13

*Nuance Communications, Inc. v. Abbyy Software House*,
  626 F.3d 1222 (Fed. Cir. 2010) ................................................................... 13

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
   148 F.3d 1355 (Fed. Cir. 1998) ................................................................................ 10

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*,
   563 F.3d 1285 (Fed. Cir. 2009) ............................................................ 9, 12, 13, 14

*Touchcom, Inc. v. Bereskin & Parr*,
   574 F.3d 1403 (Fed. Cir. 2009) .............................................................................. 9, 14

**Statutes**

28 U.S.C. §1631 ............................................................................................................. 5

**Rules**

Federal Rule of Civil Procedure 12(b)(2) ...................................................................... 1, 4

Federal Rule of Civil Procedure 12(b)(5) ...................................................................... 1, 4

Federal Rule of Civil Procedure 4(f)(1) ......................................................................... 5, 6

Federal Rule of Civil Procedure 4(k)(1) ........................................................................ 13

Federal Rule of Civil Procedure 4(k)(2) ........................................................................ 14, 15

Defendant Omilia Natural Language Solutions, Ltd. ("Omilia NLS") moves to dismiss Nuance Communications, Inc.'s ("Nuance") complaint under Federal Rule of Civil Procedure 12(b)(5) and 12(b)(2). This motion is supported by the declarations of Agathi Nicolaou, Tasos Michael, Ioannis Nikolaidis and Dimitris Vassos.

## I.     FACTUAL BACKGROUND

### A.     Ineffective Service in Cyprus Under the Hague Convention

Nuance filed this action on June 28, 2019, alleging that Omilia NLS infringes its patent rights in eight United States Patents. ECF No. 1. Omilia NLS is a corporation formed under the laws of and headquartered in Cyprus. Declaration of Ioannis Nikolaidis ("Nikolaidis Decl.") ¶ 3. Omilia NLS does not employ any persons in Massachusetts, own or rent permanent office space in Massachusetts, or have direct or indirect custumers in Massachusetts. Nikolaidis Decl. ¶¶ 5, 7, 10.

The pertinent facts relating to Nuance's purported attempt to serve process on Omilia NLS are as follows. On August 1, 2019, a gentleman named Mr. Yuri Peri visited Inomenon Ethnon 48, Guricon House, 6042 Lanarca, Cyprus ("Guricon House") and asked to speak with key personnel of Omilia NLS. Declaration of Tasos Michael ("Michael Decl.") ¶ 2; Declaration of Agathi Nicolaou ("Nicolaou Decl.") ¶ 8. The persons present at Guricon House informed Mr. Peri that there were no Omilia key personnel at Guricon House and that Guricon House is not the registered address for Omilia NLS. Michael Decl. ¶ 4; Nicolaou Decl. ¶ 10. Mr. Peri stated that he had visited Omilia NLS's registered address in Limassol, but that the office was closed. Michael Decl. ¶ 5; Nicolaou Decl. ¶ 12. The official registered address of Omilia NLS at the Republic of Cyprus, Ministry of Energy, Commerce and Industry, Department of

Registrar of Companies and Official Receiver is Gladstonos 55, Roussos Center Point, Floor 3, Flat 3C-3D, 3040, Limassol, Cyprus.  Nikolaidis Decl. ¶ 2, Ex. A; Nicolaou Decl. ¶ 6.

Mr. Peri left a package of documents — comprising the Summons in a Civil Action, the Complaint for patent infringement, Exhibits A-H, Civil Cover Sheet, Category Form 1-2019.wpd, Nuance's Corporate Disclosure Statement, Report on Filing or Determination of an Action Regarding Patent or Trademark, Plaintiff's motions for Pro Hac Vice, the CM/ECF civil docket in this matter, a blank Notice form, and the Service Instructions provided to the Process Service Network — at Guricon House despite the fact that no one present at Guricon House signed for the documents or agreed to accept the documents on behalf of Omilia NLS.  Michael Decl. ¶¶ 7-8; Nicolaou Decl. ¶ 13.

Nuance filed a notice of Summons Returned Executed on August 7, 2019.  ECF No. 12.  The purported proof of service contained in the notice claimed that the summons and complaint were served on Dimitris Vassos, whom the proof of service identifies as "Chief Executive Officer" of Omilia NLS, on August 1, 2019, at Guricon House.  ECF No. 12 at 2.  However, Mr. Vassos was not physically present in Cyprus for any portion of the day on August 1, 2019.  Declaration of Dimitris Vassos ("Vassos Decl.") ¶ 3.

### B.  Omilia NLS Had No Contacts with Massachusetts on June 28, 2019, When the Complaint was Filed

The Omilia website indicated for a finite period from January 2015 to October 21, 2018, a presence in Boston at 51 Melcher Street, 1st Floor, Boston, MA  02210.  Nikolaidis Decl. ¶ 5.  However, the address indicated was a WeWork facility for receipt of mail and for hourly conference room rental.  Nikolaidis Decl. ¶ 5.  Mr. Quinn Agen

was listed as the Boston Omilia NLS contact.  Nikolaidis Decl. ¶ 5.  At the time Mr.

Agen was a freelance, independent contractor consultant to Omilia NLS, Mr. Agen did

not reside in Boston.  Nikolaidis Decl. ¶ 5.  There were no Omilia NLS employees,

consultants, or agents resident in the WeWork facility or Massachusetts.  Nikolaidis Decl.

¶ 5.

Omilia terminated its arrangement with WeWork on or about November 2017.

Nikolaidis Decl. ¶ 6.  Mr. Agen never used the Boston WeWork space and instead

worked out of New York and Florida during the pendency of his consultancy relationship

with Omilia NLS.  Nikolaidis Decl. ¶ 7.  No sales or offers to sell Omilia NLS products

were made from the Boston WeWork Facility.  Nikolaidis Decl. ¶ 9.  On June 28, 2019,

Omilia had no presence or activities in Massachusetts.  Nikolaidis Decl. ¶ 10.

### C.     Omilia NLS's Contacts with the United States

The Omilia NLS software products that Nuance alleges infringe its patents have

been sold in Illinois.

In June 2017, Omilia NLS entered into an agreement with Convergys of

Cincinnati, Ohio for Convergys to act as a reseller of Omilia NLS products.  Nikolaidis

Decl. ¶ 12.  Convergys was acquired by Concentrix of Greenville, South Carolina in late

2018.  Nikolaidis Decl. ¶ 12.  Concentrix has sold Omilia NLS software products to

Discover Financial Services ("Discover"), which is located in Riverwoods, Illinois.

Nikolaidis Decl. ¶ 12.  Since the initial sale, Omilia NLS has worked on the Omilia NLS

software products sold to Discover at Discover's Illinois facility.  Nikolaidis Decl. ¶ 13.

In August 2018, Omilia NLS entered into a confidential Collaborative

Development Agreement with a company located in Chicago, Illinois.  Nikolaidis Decl. ¶

14.  As of June 28, 2019, Omilia NLS has performed professional services pursuant to

3

this confidential contract.  Nikolaidis Decl. ¶ 14.

In November 2018, Omilia NLS entered into a Non-Exclusive License and Distribution Agreement with NICE-In Contact of Sandy, Utah, so that NICE-In Contact could act as a reseller of Omilia NLS products in the United States.  Nikolaidis Decl. ¶ 11.  NICE-In Contact has sold Omilia NLS software products to AON in Chicago, Illinois.  Nikolaidis Decl. ¶ 11.

## II.    LEGAL STANDARD

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of process must be satisfied."  *Aly v. Mohegan Council-Boy Scouts of AM.*, No. 08-40099-FDS, 2009 U.S. Dist. LEXIS 97254, at *2 (D. Mass. Apr. 20, 2009).  Under Federal Rule of Civil Procedure 12(b)(5) a defendant may challenge the effectiveness of service of process by moving to dismiss for improper service.  Fed. R. Civ. P. 12(b)(5).  Where a defendant challenges service of process, the plaintiff bears the burden of proving that service was proper.  *Aly*, 2009 U.S. Dist. LEXIS 97254 at *4 (quoting *Lopez v. Municipality of Dorado*, 979 F.2d 885, 887 (1st Cir. 1992)).

A defendant may additionally move to dismiss under Rule 12 for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  Under Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over the defendant.  *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002).  A court may choose among several methods for determining whether the plaintiff has met its burden on a motion to dismiss under Rule 12(b)(2): the "prima facie" standard, the "preponderance-of-the-evidence" standard, or the "likelihood" standard.  *Id.* at 51 n.5; *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145-46 (1st Cir. 1995);

4

*Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 674-75 (1st Cir. 1992).

Where personal jurisdiction is available in another federal district, transfer of the action may be appropriate. *See* 28 U.S.C. §1631 (when the "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought at the time it was filed or noticed").

### III.   THE COURT SHOULD DISMISS THE COMPLAINT BASED ON IMPROPER SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION

Omilia NLS is a Cypriot corporation.  Cyprus is a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention").  As explained below, Nuance did not effectuate proper service of process on Omilia NLS under the Hague Convention and Nuance's failure to properly serve Omilia NLS warrants dismissal of this action.

Even if service had been effective, Nuance fails to plead facts supporting sufficient minimum contacts to warrant the Court's exercise of personal jurisdiction over Omilia NLS.  As an alternative to dismissal, should the Court choose to transfer the case, the Northern District of Illinois would be more appropriate for this action based on Omilia NLS's contacts with Illinois.

### A.   Nuance Did Not Serve Omilia NLS In Accordance with the Hague Convention.

Where the defendant is a foreign corporation, plaintiffs may effectuate service pursuant to Federal Rule of Civil Procedure ("Rule") 4(f)(1).  Rule 4(f)(1) allows a party to serve a foreign defendant outside of the United States by "internationally agreed means of service . . . such as those authorized by the Hague Convention on the Service Abroad

of Judicial and Extrajudicial Documents."  Fed. R. Civ. P. 4(f)(1).  Cyprus is a signatory

of the Hague Convention.  A party seeking to serve Omilia NLS may do so in three ways:

(1) through regular postal channels (Convention of 15 November 1965 on the Service

Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, T.I.A.S.

No. 6638, 20 U.S.T. 361, art. 10 ("Hague Convention")); (2) through a designated

Central Authority who receives requests for service and proceeds with the service under

the convention and local laws (Hague Convention, art. 2); or (3) through

diplomatic/consular agents, judicial officers, officials or other competent persons (Hague

Convention, art. 10).  Declaration of Nicolaou Decl.¶ 14.  Where a party chooses to serve

documents through diplomatic/consular agents, judicial officers, officials or other

competent persons, Cypriot law requires that the documents be served on either an officer

or director of the entity or at the entity's registered address.  *See* European Judicial

Network, Service of documents – Cyprus, https://e-justice.europa.eu/content_

service_of_documents-371-cy-en.do?member=1 (last visited Aug. 21, 2019).

    The notice of summons returned executed (ECF No. 12) suggests that a person

named Silvio Russo served the summons and accompanying documents on Dimitris

Vassos, whom the notice identifies as "Chief Executive Officer," on August 1, 2019, by

handing Mr. Vassos a copy of the complaint at Guricon House at 11:00 am.  ECF No. 12

at 2 (additional information regarding service in footnote).  Nuance's notice of summons,

however, contains numerous inaccuracies.

    First, Mr. Vassos was not in Cyprus on August 1, 2019; as such, no one could

have "handed the documents" to Mr. Vassos at Guricon House on that day.  Vassos Decl.

¶ 3.

Furthermore, an investigation carried out by Omilia NLS's legal counsel in Cyprus, Agathi Nicolau, reveals additional material inaccuracies in Nuance's description of the purported service of process on Omilia NLS.  Ms. Nicolaou's investigation determined that Mr. Peri, not Silvio Russo, visited Guricon House on August 1, 2019, and asked to speak with key Omilia NLS personnel.  Nicolaou Decl. ¶ 8; Michael Decl. ¶ 2.  The receptionist and other persons present at Guricon House informed Mr. Peri that there were no key Omilia NLS personnel at Guricon House and that the registered office for Omilia NLS is located in Limassol.  Nicolaou Decl. ¶ 10; Michael Decl. ¶ 4.  The persons present at Guricon House did not sign for delivery of the service documents or consent to receive them.  Nicolaou Decl. ¶ 13; Michael Decl. ¶ 7.  Mr. Peri left the documents at Guricon House on August 1, 2019.  Nicolaou Decl. ¶ 13; Michael Decl. ¶ 8. Nuance's notice of service, therefore, contains substantial inaccuracies about how the alleged service occurred; dismissal of the instant action is warranted on this basis alone. *See Lemus v. Thanh BBQ & Noodle, Inc.*, No. 17-cv-01890-NC, 2018 U.S. Dist. LEXIS 114724, at *10, (N.D. Cal. July 10, 2018) (finding service improper where evidence showed the proof of service was false).

Even if Nuance's proof of service had accurately detailed the sequence of events as they actually occurred, service would still be ineffective because Mr. Peri did not serve process on an officer of Omilia NLS or at the registered office of Omilia NLS.  *Leopard Marine & Trading, Ltd. v. Easy Street, Ltd.*, No. 15-CV-3064 (JSR), 2015 U.S. Dist. LEXIS 108269, at *14 (S.D.N.Y. Aug. 6, 2015) ("Cypriot law provides that service is valid where it is served upon an officer of the corporation or at the corporation's registered office.").

First, as noted above, Mr. Vassos was not in Cyprus on August 1, 2019, and could not have received the service documents from Mr. Peri.  Vassos Decl. ¶ 3.  Mr. Peri also did not leave the documents with any other officer of Omilia NLS.  Rather, Mr. Peri left the documents with third parties at Guricon House who had already informed him that no key Omilia NLS personnel were present.  Michael Decl. ¶ 8.

Second, Nuance did not leave the documents at Omilia NLS's registered office.  The official registered address for Omilia NLS at the Registrar of Companies and Official Receiver is Gladstonos 55, Roussos Center Point, Floor 3, Flat 3C-3D, 3040, Limassol, Cyprus.  Nikolaidis Decl. ¶ 2, Ex. A; Nicolaou Decl. ¶ 6.  Mr. Peri admitted to the employees at Guricon House that he had been to the Gladstonos office, but the office was closed.  Michael Decl. ¶ 5; Nicolaou Decl. ¶ 12.

Because Nuance neither served the documents on an officer of the corporation nor served the documents at the corporation's registered office, service was improper under Cypriot law and the Hague Convention.  Nicolaou Decl. ¶ 15.  Nuance failed to provide an accurate proof of service and did not properly serve Omilia NLS in accordance with Cypriot law and the Hague Convention when it left documents at Guricon House.  Accordingly, the Court should dismiss this action for improper service.

### B.   The Court Lacks Personal Jurisdiction Over Omilia NLS under the Massachusetts Long Arm Statute

Nuance fails to plead sufficient facts to establish this Court's personal jurisdiction over Omilia NLS.  First, the alleged contacts are insufficient to confer jurisdiction on this Court as the contacts were not in existence at the time the Complaint was filed.  Further, Omilia NLS's connection with Massachusetts amounts to little more than access to a shared workspace in Boston, to which it no longer had access as of the date Nuance filed

its complaint, and an address-listing on Omilia's website.  To the extent the Court finds these to constitute sufficient minimum contacts with Massachusetts, the litigation does not arise out of or relate to those contacts.  As such, the Court should dismiss Nuance's Complaint for lack of personal jurisdiction.

"[A] federal court addressing personal jurisdiction over a defendant approaches such an inquiry by analyzing the long-arm statute and governing principles of the forum state." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1410 (Fed. Cir. 2009).  The First Circuit recognizes the Massachusetts long-arm statute is "coextensive with the limits permitted by the Constitution." *Adelson v. Hananel*, 652 F.3d 75, 80 (1st Cir. 2011) (footnote omitted).  Thus, the Court may "sidestep the statutory inquiry and proceed directly to the constitutional analysis." *Daynard*, 290 F.3d at 52.  The Federal Circuit has interpreted *International Shoe* to require a three-pronged approach to determining whether exercise of personal jurisdiction over a defendant is proper: (1) the defendant must have minimum contacts with the forum state, i.e. the defendant has "purposefully directed its activities at residents of the forum"; (2) "the claim arises out of or relates to the defendant's activities in the forum"; and (3) the "assertion of personal jurisdiction is reasonable and fair." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009).

### 1. Omilia NLS has not purposefully directed activities at residents of the District of Massachusetts

Omilia NLS's contacts with the forum state are insufficient to permit the exercise of jurisdiction in Massachusetts.  Minimum contacts may exist either where there are "continuous and systematic" connections with the forum or "isolated and sporadic" connections. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359

(Fed. Cir. 1998).  Where the connections are isolated and sporadic, the actions must arise

out of defendant's contacts with the forum.  *Id.*  "'Random,' 'fortuitous,' or 'attenuated'

contacts do not count in the minimum contacts calculus."  *Id.*

Here, Omilia NLS's temporary and passive contacts with Massachusetts are

insufficient to establish either general or specific personal jurisdiction.  At the time the

complaint was filed, Omilia did not employ any persons in Massachusetts, own or rent

permanent office space in Massachusetts, or have direct or indirect custumers in

Massachusetts.  Nikolaidis Decl. ¶ 10.

Nuance alleges that this Court may exercise personal jurisdiction over Omilia

NLS based on a Massachusetts address that at one time was listed on the

www.omilia.com website (51 Melcher Street, 1st Floor, Boston, MA  02210)[1] and

alleged sales to unknown customers in Massachusetts.  ECF No. 1 ¶¶ 6-8.  The address

Nuance relies on is a WeWork co-working space that Omilia NLS utilized from January

2015 until on or about November 2017, for the limited purpose of receiving mail and

potential rental of conference rooms.  Nikolaidis Decl. ¶ 5.  That space was never used by

the listed Omilia contact, Quinn Agen, Omilia NLS's independent contractor consultant,

and the arrangement was terminated long before Nuance filed the complaint on June 28,

2019.  Nikolaidis Decl. ¶¶ 6-7.  Because the alleged contacts with Massachusetts

terminated in October 2018 at the very latest, before Nuance filed this litigation, they do

not and cannot warrant exercise of personal jurisdiction over Omilia NLS.  *GAF Bldg.*

*Materials Corp. v. Elk Corp.*, 90 F.3d 479, 483 (Fed. Cir. 1996) ("Rather, 'the presence

or absence of jurisdiction must be determined on the facts existing at the time the

---

[1]     Omilia's website listed the WeWork address with Mr. Agen as a contact from
January 2015 to October 2018.  Nikolaidis Decl. ¶ 5.

complaint under consideration was filed.'").

Moreover, even if Omilia NLS had maintained the WeWork arrangement as of June 28, 2019, that arrangement would not constitute the type of purposefully-directed activity within the forum state required to establish "minimum contacts" for personal jurisdiction.  Omilia NLS did not make any sales or offers to sell Omilia NLS products from the WeWork space in Boston to Massachusetts residents or any other entities. Nikolaidis Decl. ¶ 9.  In fact, Omilia NLS has not sold any products in Massachusetts. Nikolaidis Decl. ¶ 4.  Neither Mr. Vassos, Mr. Agen, nor any other agent, employee, officer, or director of Omilia reserved conference rooms or used the WeWork office space during the pendency of the arrangement.  Nikolaidis Decl. ¶ 7.  Nor did Omilia NLS ever collect any mail from the WeWork facility.  Nikolaidis Decl. ¶ 8.  The WeWork facility was essentially a glorified mailbox for Omilia NLS, which it never used.  This is insufficient to confer personal jurisdiction in Massachusetts.

At the time of filing the complaint, therefore, Omilia lacked "minimum contacts" with Massachusetts, and thus, personal jurisdiction did not exist.

### 2.  Nuance's complaint for patent infringement does not arise out of Omilia's contacts with Massachusetts

Nuance's complaint alleges Omilia NLS offers for sale or sells its speech recognition software within the United States.  ECF No. 1 ¶ 32 ("making, using, offering to sell, selling, and/or importing") (exemplary paragraph).  Omilia NLS did not use the Boston WeWork space, and thus, could not have made, used, offered to sell, sold or imported, the accused software into the United States from or in connection with Massachusetts.  Nikolaidis Decl. ¶ 7.  Accordingly, the complaint does not arise out of or relate to Omilia NLS's alleged contacts with Massachusetts.

11

### 3. Fairness requires the action be dismissed for lack of personal jurisdiction

Fairness considerations also favor dismissal of this action.  The final question in the Constitutional analysis is whether the exercise of jurisdiction would violate traditional notions of "fair play and substantial justice."  *Synthes (U.S.A.)*, 563 F.3d at 1296.  The Federal Circuit considers five factors when determining the fairness inquiry:

> (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1352 (Fed. Cir. 2003) (citation omitted).

As to the first factor, the burden on Omilia NLS will be great as it is a foreign corporation without contacts to the forum state.  Omilia NLS has no agents, employees, offices, or documents in Massachusetts.  Nikolaidis Decl. ¶ 5.  All information and evidence pertaining to Omilia NLS's defenses will be located outside the forum.  A more suitable forum of the Northern District of Illinois exists that would reduce the burden on Omilia NLS as, among other things, documents and information potentially relevant to this matter are more likely to be located there than in Massachusetts.

With respect to the interest of the forum, Omilia recognizes that Massachusetts generally has an interest in protecting its companies.  As Nuance is headquartered in Massachusetts, the forum has an interest in the case.

Nuance's interest in obtaining relief is analyzed from Nuances's perspective.  *See Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1368 (Fed. Cir. 2006) (finding the third factor "requires the court to focus on the convenience and

effectiveness of relief from the plaintiff's perspective").  While Nuance may argue that Massachusetts is a more convenient and effective forum, Nuance has previously proven it is willing and able to file lawsuits and litigate in other forums outside its home forum. *See, e.g.*, *Nuance Communications, Inc. v. Abbyy Software House*, 626 F.3d 1222 (Fed. Cir. 2010); *Nuance Communications Inc. v. Tellme Networks Inc.*, 707 F. Supp. 2d 472 (D. Del. 2010).  Further, in a patent litigation matter, where the law is one of a federal question, litigating in a home forum is no more effective than litigating in another federal forum.  Thus, while generally courts find this factor weighs in favor of fairness when plaintiff is litigating in its home forum, other considerations tip this factor in favor of Omilia NLS.

Factors four and five "are concerned with the potential clash of substantive social policies between competing fora and the efficiency of a resolution to the controversy." *Synthes (USA)*, 563 F.3d at 1300 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).  The fourth factor weighs in Omilia NLS's favor because a more suitable forum exists in which to litigate this matter that would permit a more efficient resolution as evidence relating to the alleged infringement is more likely located in the other forum.

Finally, the United States has a public policy of not permitting a plaintiff to drag a foreign defendant into a forum in which the defendant has no contacts or ties, especially where, as here, another more suitable forum exists.  Accordingly, the five factors highlight the unreasonableness of requiring Omilia NLS to litigate in the District of Massachusetts and personal jurisdiction does not exist under Federal Rule of Civil Procedure 4(k)(1).

### C.     The Court Lacks Personal Jurisdiction over Omilia NLS under 4(k)(2)

As if recognizing the weakness in its personal jurisdiction allegations, Nuance

alternatively asserts that personal jurisdiction exists under Federal Rule of Civil

Procedure 4(k)(2).  ECF No. 1 ¶ 9.  Rule 4(k)(2) provides in relevant part:

> (2) *Federal Claim Outside State-Court Jurisdiction.*  For a claim that
> arises under federal law, serving a summons or filing a waiver of service
> establishes personal jurisdiction over a defendant if:
>> (A) the defendant is not subject to jurisdiction in any state's courts
>> of general jurisdiction; and
>> (B) exercising jurisdiction is consistent with the United States
>> Constitution and laws.

Fed. R. Civ. P. 4(k)(2).

In essence, Rule 4(k)(2) allows a court of any district to exercise personal

jurisdiction over a foreign defendant when there is no one jurisdiction in which the

defendant is subject to personal jurisdiction, and the defendant maintains minimum

contacts with the United States as a whole.  To establish jurisdiction under Rule 4(k)(2), a

plaintiff must demonstrate "(1) the plaintiff's claim arises under federal law, (2) the

defendant is not subject to personal jurisdiction in any state's court of general

jurisdiction, and (3) the exercise of jurisdiction comports with due process."  *Synthes

(U.S.A.)*, 563 F.3d at 1293-94.  The Federal Circuit places the burden on the defendant to

identify an alternative forum in which it is subject to personal jurisdiction.  *See

Touchcom*, 574 F.3d at 1414 ("[I]f, however, the defendant contends that he cannot be

sued in the forum state and refuses to identify any other where suit is possible, then the

federal court is entitled to use Rule 4(k)(2).") (quoting *ISI Int'l, Inc. v. Borden Ladner

Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001)).

Omilia NLS does not dispute that the complaint asserts causes of actions for

alleged violations of the patent laws of the United States, and thus, arises under federal

law.  Nor does Omilia NLS dispute that its activities within the United States are sufficient to establish minimum contacts with the United States as a whole.

However, while Omilia is not subject to suit in Massachusetts, it is subject to suit in the Northern District of Illinois based on Omilia NLS's contacts with the district. Omilia NLS has a reseller agreement with NICE-In Contact of Sandy, Utah whereby NICE-In Contact sells Omilia NLS's products in the United States.  Nikolaidis Decl. ¶ 11.  NICE-In Contact, in turn, has sold Omilia NLS products to AON in Chicago, Illinois. Nikolaidis Decl. ¶ 11.  Through a reseller agreement between Omilia NLS and Concentryx Omilia NLS products have also been sold to Discover Financial Services ("Discover"), which is headquartered in Riverwoods, Illinois, also within the Northern District of Illinois.  Nikolaidis Decl. ¶ 12.  These sales concern some of the same Omilia NLS software at issue in Nuance's complaint.  Additionally, Omilia NLS has entered into a confidential development agreement to provide development services to a company headquartered in the Chicago area, located within the Northern District of Illinois. Nikolaidis Decl. ¶ 14.

At a minimum, Omilia NLS is subject to specific personal jurisdiction in the Northern District of Illinois based on the sale to and alleged use of products by AON and Discover in the district.  For these reasons, Omilia NLS is subject to jurisdiction in another judicial district, and thus, is not subject to personal jurisdiction in Massachusetts under 4(k)(2).  Accordingly, Omilia NLS requests that the Court dismiss the complaint with prejudice or in the alternative transfer the case to the Northern District of Illinois.

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss Nuance's complaint for failure to properly serve Omilia NLS and for lack of personal jurisdiction, or in the

alternative transfer this action to the Northern District of Illinois.


Dated:    August 22, 2019                    Respectfully Submitted,


                                             /s/ *Kevin C. Adam*
                                             Kevin C. Adam (SBN 684955)
                                             WHITE & CASE LLP
                                             75 State Street, 24th Floor
                                             Boston, MA  02109
                                             (617) 979-9300
                                             Kevin.adam@whitecase.com

                                             Of Counsel:
                                             Dimitrios Drivas (*pro hac vice pending*)
                                             Raj Gandesha (*pro hac vice pending*)
                                             John Padro (*pro hac vice pending*)
                                             Leon Miniovich (*pro hac vice pending*)
                                             WHITE & CASE LLP
                                             1221 Avenue of the Americas
                                             New York, NY  10020-1095
                                             (212) 819-8286
                                             ddrivas@whitecase.com
                                             rgandesha@whitecase.com
                                             jpadro@whitecase.com
                                             lminiovich@whitecase.com

                                             Hallie Kiernan (*pro hac vice pending*)
                                             WHITE & CASE LLP
                                             3000 El Camino Real
                                             Two Palo Alto Square, Suite 900
                                             Palo Alto, CA  94306
                                             (650) 213-0300
                                             hallie.kiernan@whitecase.com

                                             *Counsel for Omilia Natural Language
                                             Solutions, Ltd*

## LOCAL RULE 7.1(a)(2) CERTIFICATION

I hereby certify that on August 22, 2019, counsel for Omilia NLS and Nuance conferred in good faith about this motion but were unable to resolve or narrow the issues raised in this motion at this time.  Counsel have agreed to continue to confer following the filing of this motion.

/s/ *Kevin C. Adam*
Kevin C. Adam


## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on August 22, 2019, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5.4 (c).  Any other counsel of record will be served by First Class U.S. Mail on this same date.

/s/ *Kevin C. Adam*
Kevin C. Adam