**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

```
_____
                              )
NUANCE COMMUNICATIONS, INC.,  )
                              )
              Plaintiff,      )
                              )    Civil Action
       v.                     )    No. 19-11438-PBS
                              )
OMILIA NATURAL LANGUAGE SOLUTIONS, )
LTD.,                         )
                              )
              Defendant.      )
_____)
```

**MEMORANDUM AND ORDER**

December 16, 2019

Saris, C.J.

**INTRODUCTION**

Nuance Communications, Inc. ("Nuance") brings this action against Omilia Natural Language Solutions, Ltd. ("Omilia") alleging infringement of eight patents belonging to Nuance. The patents concern automated speech recognition and interactive voice response systems commonly used in call centers around the world. Omilia, a Cypriot corporation, moves to dismiss the complaint for lack of personal jurisdiction. In the alternative, Omilia asks the Court to transfer the case to the Northern

1

District of Illinois.[1] Omilia also moved to dismiss for improper service but since has waived that argument. Nuance opposes all relief sought by Omilia.

After hearing, the Court **DENIES** Omilia's motion to dismiss (Dkt. No. 14).

## FACTUAL BACKGROUND

On a motion to dismiss for lack of personal jurisdiction, a plaintiff "need[] only to make a prima facie showing that the defendants were subject to personal jurisdiction." Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201 (Fed. Cir. 2003) (internal quotation marks omitted).[2] The "court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003). Accordingly, the following factual background comes from Nuance's complaint along with the

---

[1] Omilia concedes that it has sufficient minimum contacts with the Northern District of Illinois for the exercise of personal jurisdiction.
[2] Federal Circuit law governs personal jurisdiction in this patent case. See Momenta Pharm., Inc. v. Amphastar Pharms., Inc., 841 F. Supp. 2d 514, 518 n.2 (D. Mass. 2012) ("Federal Circuit law governs the issue of personal jurisdiction in a patent infringement case."); see also Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1328 (Fed. Cir. 2008) (noting Federal Circuit law governs personal jurisdiction analysis in patent cases "because the jurisdictional issue is 'intimately involved with the substance of the patent laws.'" (quoting Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995))).

affidavits and exhibits submitted by both parties. The facts are assumed to be true, either because they are affirmatively alleged by Nuance or because they are otherwise uncontradicted.

I. **Relevant Technology and Alleged Infringement**

Nuance is a Delaware corporation with its principal place of business in Burlington, Massachusetts. Nuance designs automated speech recognition and transcription technology, including the Conversational Interactive Voice Response system. Call centers use these systems around the world and in multiple languages. Nuance owns patents covering its technologies and alleges that Omilia infringed eight of its patents.

Omilia is based in Cyprus and entered the North American market in 2015. Omilia released a "Conversational Virtual Agent solution" for Royal Bank of Canada in 2016. Dkt. No. 22 at 7. Omilia also produces an "Omni-Channel Conversational Platform" called DiaManT, which includes "Artificial Intelligence and Natural Language Understanding," "Conversational Virtual Agents," "Natural Language UI," "an intelligent Dialog Management platform," and a "Natural Language Understanding engine." Id. Nuance and Omilia have a past business relationship with each other. Omilia licensed speech verification software from Nuance for use in its products overseas for an unspecified amount of time. The relationship between the two companies ended "years ago." Dkt. No. 1 at 2.

On October 9, 2018, after discovering Omilia's allegedly infringing technology, Nuance sent a letter notifying Omilia of its infringement. Omilia responded to Nuance stating that it would examine the patents and provide a response addressing Nuance's concerns. Four months later, on February 12, 2019, Nuance received a follow-up email in which Omilia's CEO said that Omilia's attorneys were looking into the matter, and Omilia intended to respond to Nuance. On March 12, 2019, Nuance received another email from Omilia stating only that "Omilia does not infringe the Nuance patents," and referring to "prior art publications that are relevant to the Nuance patent claims." Id. at 8. On March 15, 2019, Nuance requested further details and a substantive response regarding the alleged infringement but never received any response from Omilia. On June 28, 2019, Nuance filed a complaint for patent infringement in this Court.

## II. Omilia's Contacts with Massachusetts

From January 2015 to October 2018 -- the month in which Nuance notified Omilia of its alleged infringement -- Omilia identified Boston as its "North America Office" on its website. Dkt. No. 22 at 7-8. On its website, Omilia claimed to be working with financial institutions in the United States to offer the allegedly infringing platform to customers. The website also listed a Boston address and phone number. During that period the website listed Quinn Agen ("Agen") as its contact for its North

4

America Office in Boston. Omilia states that Agen "was a freelance, independent contractor consultant to Omilia," and not an agent. Dkt. No. 15 at 7. Until 2017, however, Omilia held Agen out as joining "Omilia in 2012 as employee number 6 and since then has seen the company evolve from a small team in Greece to large-scale global operation with a Virtual Assistant platform," and "return[ing] to the United States in 2015 to spearhead Omilia's entry into the North American market." Dkt. No. 22 at 8. Omilia's CEO and founder, Dimitris Vassos, indicated on his LinkedIn profile that he worked for "Omilia – Conversational Intelligence" in "Boston USA." Id. Further, Omilia hired an intern who went to school at Massachusetts Institute of Technology. The intern, Theo Sechopoulos, worked for Omilia in Athens from June 6, 2017 to July 7, 2017, and never worked for Omilia in Boston.

Omilia maintained an office at 51 Melcher Street, 1st Floor, Boston, Ma 02210 ("Melcher Street"). Melcher Street is the same address that Omilia listed on its website as its "North American Office." Id. at 7-8. Omilia did not own the building nor solely occupy it. Rather, Omilia used Melcher Street, a WeWork facility, for receipt of mail and for access to hourly conference room rentals. No Omilia employees regularly worked at Melcher Street. Omilia made neither sales of products, nor

offers to sell products from Melcher Street. Omilia's arrangement with WeWork terminated in November 2017.

Omilia sponsored and attended a conference in Boston in 2017.[3] At the American Banker Conference, Agen and representatives from Royal Bank of Canada, an important Omilia customer in North America, gave a presentation about Royal Bank of Canada's use of Omilia's interactive voice recognition platform. Representatives from numerous financial institutions attended. A reception for the attendees directly followed the presentation by Omilia and Royal Bank of Canada.

## **ANALYSIS**

In addition to moving to dismiss on personal jurisdiction grounds, Omilia also moved to dismiss for improper service. At the hearing, Omilia waived that argument because it conceded that it had been properly served by Nuance subsequent to the filing of the motion to dismiss. Accordingly, this analysis only addresses the issue of personal jurisdiction.

I. **Legal Standard**

In a patent case, "[d]etermining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits

---

[3]   Nuance did not raise this fact in the initial complaint but in their opposition to Omilia's motion to dismiss. An affidavit submitted with the opposition attests to this fact, however, and therefore may be considered on this motion to dismiss.

service of process, and whether the assertion of personal jurisdiction would violate due process." Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1329 (Fed. Cir. 2008) (quoting Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1359 (Fed. Cir. 2001)). The Court first determines whether it can exercise jurisdiction under the long-arm statute "and, if so, whether jurisdiction can be maintained consistent with due process." Akro Corp., 45 F.3d at 1544. "[T]he burden of proof is on the plaintiff to establish 'minimum contacts.'" Inamed Corp., 249 F.3d at 1360.

## II. Discussion

### A. Massachusetts's Long-Arm Statute

Omilia conceded at the hearing that the Massachusetts long-arm statute permits the Court to exercise jurisdiction over it. The Massachusetts long-arm statute allows a court to exercise personal jurisdiction over a defendant when a defendant "caus[es] [a] tortious injury by an act or omission in this commonwealth." Mass. Gen. Laws. ch. 233A, § 3(a). Here, Omilia's alleged infringement of Nuance's patents constitutes a "tortious injury . . . in this commonwealth." See Skyworks Solutions, Inc. v. Kinetic Techs. HK Ltd., No. 13-cv-10655, 2015 WL 461920, at *2 (D. Mass. Feb. 4, 2015) ("An allegation of patent infringement may be considered a tortious injury."); Hologic, Inc. v. Lunar Corp., No. 95-cv-10008, 1995 WL 661238, at *7 (D.

7

Mass. Aug. 4, 1995) (concluding that patent infringement claim should be treated as tortious injury under Massachusetts long-arm statute). Accordingly, the Court may exercise personal jurisdiction over Omilia if such exercise is consistent with Due Process.

**B. Due Process**

Due process requires a defendant to "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). For minimum contacts to exist, a "defendant's conduct and connection with the forum State" must be "such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The Court may exercise specific jurisdiction over a defendant "when the cause of action at issue 'arises out of or relates to'" the defendant's contacts with the forum state, "even if those contacts are 'isolated and sporadic.'" Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1359 (Fed. Cir. 1998) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985)). "[S]pecific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." Walden v. Fiore, 571 U.S. 277, 284

(2014) (internal quotation marks omitted). The Federal Circuit utilizes a three-part analysis to determine if sufficient contacts exist to exercise specific personal jurisdiction: purposeful availment, relatedness, and reasonableness. See Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico, 563 F.3d 1285, 1297 (Fed. Cir. 2009).

a. Purposeful Availment

The purposeful availment inquiry has two focal points: voluntariness and foreseeability. See Avocent, 552 F.3d at 1329 (noting purposeful availment requirements "ensure[] that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." (quoting Burger King Corp., 471 U.S. at 475)). To this end, the Court must review the totality of the defendant's claim-related contacts with the forum. See Elecs. for Imaging, Inc., 340 F.3d at 1351.

Voluntariness is satisfied if the defendant's contacts with the forum state are not based on "the unilateral activity of another party or a third person." Avocent, 552 F.3d at 1329 (quoting Burger King Corp., 471 U.S. at 475). Here, Omilia's contacts with Massachusetts are voluntary. Omilia maintained a Massachusetts address, listed Melcher Street on its website as its North American location, and attended a conference promoting

its products in Boston; all are voluntary acts on the part of Omilia.

The foreseeability element is satisfied when the defendant's contacts with the forum state are such that it should reasonably anticipate being haled into court there. Avocent, 552 F.3d at 1330. Omilia argues that its contacts with Massachusetts are insufficient to demonstrate purposeful availment. Specifically, Omilia argues that Melcher Street is of little significance because it "was essentially a glorified mailbox for Omilia NLS, which it never used." Dkt. No. 15 at 15. Accordingly, Omilia contends that maintaining Melcher Street and listing it as its North American office on its website does not demonstrate purposeful availment. Omilia does not discuss how its attendance at the American Banker Conference impacts the purposeful availment analysis.

Three of Omilia's contacts with Massachusetts are important to the purposeful availment analysis: Melcher Street, Omilia's website, and Omilia's attendance of the American Banker Conference. Omilia maintained Melcher Street, albeit a shared workspace, for at least two years and listed it on its website as its North American office. Maintaining an office, by itself, may demonstrate purposeful availment. See Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Serv., L.L.C., No. 06-cv-04693, 2006 WL 3290416, at *4 (N.D. Cal. Nov. 13, 2006) (finding defendant

"purposefully directed its activities at residents of the forum by maintaining an office in this district"); Tomar Elecs., Inc. v. Whelen Techs., Inc., 819 F. Supp. 871, 876 (D. Ariz. 1992) (finding that "[o]perating [an] office for ten months amounts to minimum contacts."). Moreover, Omilia listed Agen as the agent at Melcher Street. The fact that he was independent contractor does not matter for the purpose of a minimum contacts analysis.

Omilia also attended the 2017 American Banker Conference in Boston, Massachusetts, where Agen engaged in networking. Other courts have found that attending trade shows or industry conferences buttresses a finding of purposeful availment. See Elan Microelecs. Corp. v. Pixcir Microelecs. Co., No. 2:10-cv-00014, 2012 WL 523695, at *6 (D. Nev. Feb. 16, 2012) (finding purposeful direction when employee participated in trade show in forum state as "part of an international sales effort to drum up interest in" infringing product); Reid-Ashman Mfg., Inc., 2006 WL 3290416, at *4 (acknowledging its conclusion that personal jurisdiction existed was "reinforced by [defendant's] participation in [industry] conference, in San Francisco."); see also Synthes (U.S.A.), 563 F.3d at 1297-98 (finding attendance at trade shows sufficient to find minimum contacts with United States as a whole under Rule 4(k)(2)).

Taken together, Omilia's pattern of contacts with Massachusetts demonstrate that Omilia could "reasonably

anticipate[d] being haled into court [in Massachusetts]." Avocent, 552 F.3d at 1330.

   b. Relatedness

The Federal Circuit's interpretation of relatedness is more permissive than the "proximate cause" or "but for" analyses used in other circuits. Avocent, 552 F.3d at 1337. The Federal Circuit notes that "it is significant that the constitutional catch-phrase is disjunctive in nature, indicating an added flexibility and signaling a relaxation of the applicable standard from a pure 'arise out of' standard." Id. at 1330 (quoting Inamed, 249 F.3d at 1362). Under this flexible standard, Nuance's claim relates to Omilia's contacts with Massachusetts. Maintaining Melcher Street and listing it as its North American address demonstrates Omilia's attempt to market its products -- including the allegedly infringing products -- to customers in Massachusetts. Omilia's attendance at the 2017 American Banker Conference reinforces this conclusion. See Elan Microelecs. Corp., No. 2:10-cv-00014, 2012 WL 523695, at *6 (finding relatedness where defendant attended tradeshow with purpose of marketing allegedly infringing product). Accordingly, Nuance's claim satisfies the "arise out of or related to" inquiry.

c. Reasonableness

To determine whether the exercise of personal jurisdiction is reasonable and fair, the Federal Circuit considers five factors: "(1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive social policies." Synthes (U.S.A.), 563 F.3d at 1299.

Omilia concedes "that Massachusetts generally has an interest in protecting its companies," but argues that all other factors weigh in its favor.

The "plaintiff's interest and the state's interest in adjudicating the dispute in the forum [must be] so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum" for the burden on the defendant to weigh in Omilia's favor. Xilinx, Inc. v. Papst Licensing GMBH & Co. KG, 848 F.3d 1346, 1356 (Fed. Cir. 2017) (quoting Akro Corp., 45 F.3d at 1549). The interests of both Nuance and Massachusetts are clearly not attenuated in this case as Massachusetts is Nuance's principal place of business. Further, Omilia's argument that it is burdened simply because it is a foreign corporation without an office here is unconvincing,

13

especially considering it previously maintained an office and attended a conference in the state. See Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1367 (Fed. Cir. 2006) (holding defendant's "general assertion of hardship, without supporting evidence, as unpersuasive" when analyzing burden posed by exercise of personal jurisdiction).

When analyzing the plaintiff's interest in obtaining "convenient and effective relief," the "inquiry requires the court to focus on the convenience and effectiveness of relief from the plaintiff's perspective." Id. at 1367-68 (emphasis added). Nuance is bringing this claim where it is headquartered, demonstrating that Massachusetts is a convenient and effective forum for Nuance. See id. at 1368("[I]t is clearly more convenient for a Florida corporation with its base of operations in Florida to obtain relief in Florida."). Regarding efficiency, this district is particularly experienced with handling patent cases, especially with the recent adoption of Local Rule 16.6. There is nothing in the record to suggest the Northern District of Illinois would provide a more efficient resolution of the case. Finally, there is the "shared interest of the states in furthering fundamental social policies." But there are no forum specific interests implicated in this patent case because it is controlled by federal law and Federal Circuit precedent applies.

Considering all of these factors together, exercise of personal jurisdiction by the Court over Omilia is fair and reasonable.

**ORDER**

For the foregoing reasons, the Court **DENIES** Omilia's motion to dismiss (Dkt. No. 14).

SO ORDERED.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge