IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NUANCE COMMUNICATIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>OMILIA NATURAL LANGUAGE SOLUTIONS, LTD.,<br><br>Defendant. | Case No. 1:19-cv-11438-PBS |

### STIPULATION AND [PROPOSED] ORDER ESTABLISHING PROTOCOL GOVERNING PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION ("ESI")

Plaintiff Nuance Communications, Inc. and Defendant Omilia Natural Language Solutions, Ltd. (collectively, the "Parties" and each a "Party") hereby move the Court to enter an order governing the discovery of electronically stored information and paper documents in the above-captioned matter as follows:

### I. GENERAL PROVISIONS

1. **Applicability.** All hard copy documents and electronically stored information other than source code (as human-readable programming language text that defines software, firmware, or electronic hardware descriptions) ("ESI") produced by the Parties in the above-captioned proceedings, and any other related actions assigned to this Court, except as otherwise provided in this Order, shall be produced in accordance with the following Protocol.

2. **Reservation of Rights, Obligations, and Responsibilities.** Nothing in this Protocol alters a Party's rights, obligations, and responsibilities under the applicable Federal Rules of Civil Procedure and other applicable law, nor does anything in this Protocol impose

additional burdens beyond those imposed by the Federal Rules of Civil Procedure and other applicable law.  The Parties reserve all objections under the Federal Rules of Civil Procedure and other applicable law for matters relating to the production of data that are not specifically addressed in this Protocol.

      3.      **Custodians and Data Repositories.**  The Parties may identify hard copy documents or Electronically Stored Information ("ESI") by identifying custodians and data repositories reasonably likely to possess potentially relevant, responsive documents and making reasonable efforts to locate potentially relevant, responsive documents within those sources.

      4.      **Applicability of Protective Order.**  The Parties understand that this Protocol contemplates the production of large volumes of documents, and they acknowledge that nothing in this Order waives, restricts, or eliminates the Parties' "claw-back" rights pursuant to any Protective Order(s) in this case, or governing law, rules, orders, or agreements regarding inadvertently produced documents.  Pursuant to Federal Rule of Evidence 502(d), any inadvertent production of a privileged or work product-protected document or ESI is not a waiver in the pending case or in any other Federal or State proceeding.  The proper procedure for the notification and return of privileged information inadvertently produced in this matter is governed by the Stipulated Protective Order entered in this litigation.

      5.      **Obligation to Meet and Confer.**  The Parties shall meet and confer and endeavor to resolve any disputes arising hereunder, before submitting such disputes to the Court for determination.

1) **Scope of Discovery**
   a) **Discovery Efforts**
      i) **Accessible ESI.**  Each Party represents that it has taken reasonable steps, including but not limited to timely implementation of a litigation hold, to preserve reasonably accessible

sources of ESI in which it is reasonably likely that information relevant or reasonably likely to lead to the discovery of information relevant to the above matter may be found. Except as set forth in subparagraph 1(a)(ii), reasonably accessible sources of ESI include all active e-mail accounts, archived e-mail accounts stored on an active hard-drive or server, shared network drives, workstation or laptop hard drives, external storage devices or media, and web or cloud based services. Each Party will conduct a diligent search of those reasonably accessible sources in which it has reason to believe relevant ESI responsive to the opposing Party's discovery requests will be found.

    ii) **Not Reasonably Accessible ESI.** The Parties agree the circumstances of this case do not warrant the collection, review or production of ESI that is not reasonably accessible that in the first instance if, and only to the extent that, the Party in possession of that ESI (1) has complied with the representations and obligations set forth in subparagraph 1(a)(i), *and* (2) believes in good faith that ESI is unlikely to contain relevant information not otherwise available in reasonably accessible sources. However, should a specific need for any ESI that is not reasonably accessible be identified, the Parties agree to meet and confer regarding production of such ESI. Absent an agreement among the Parties as to production, the matter may be presented to the Court for resolution.

    For purposes of this paragraph, the Parties agree that the following sources of ESI are considered not reasonably accessible:

    (1) Backup tapes, drives, and systems created for the sole purpose of disaster recovery;

    (2) Voicemail;

    (3) Instant Messaging, except for instant messaging that has been logged and stored on active servers in the ordinary course of business;

    (4) Legacy Data (data maintained in obsolete or inaccessible format);

  (5) Residual, deleted, fragmented, damaged, or temporary data (e.g., data stored in a computer's RAM);

  (6) Encrypted data/password protected files, where the key or password cannot be ascertained absent extraordinary efforts; and

  (7) Data stored on personal devices, smartphones, tablets, or other like handheld digital devices, unless the data is not reasonably accessible from another source.

  (8) Text Message Data stored on personal devices, smartphones, tablets, or other like handheld digital devices.

Notwithstanding the foregoing, the Parties agree that ESI in categories 1, 4, 6, 7 and 8 shall be preserved.  ESI in category 6 shall be identified to the opposing Party within fourteen (14) days of the producing Party concluding that the data is not reasonably accessible and no later than the deadline for substantial completion of document production.  ESI in category 4 shall be identified to the opposing Party at a mutually agreed upon time reasonably in advance of the deadline for substantial completion of document production.

 **b) Identification of ESI for Production.**

  (1) **Search Terms.**   Each Party may use search terms to filter some sources of ESI for relevancy prior to review and production.  The Parties agree to cooperate and act with reasonable transparency concerning their use of such filtering techniques.  The Parties agree that their practices and procedures with regard to use of search terms or other technology-assisted review are not considered Attorney Work Product or Privileged information and may be requested by the opposing Party upon a showing of need.

  To the extent search terms are used, the Parties agree to confer as to a limit on the number of search terms per producing Party, in the first instance.  The Parties may jointly agree to modify this limit without the Court's leave.  The Court shall consider contested requests for

additional search terms, upon showing a distinct need based on the size, complexity, and issues of this specific case.

To the extent search terms are used, they shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. The Parties agree to confer on a process to test the efficacy of the search terms. The Parties will further meet and confer regarding the sources of ESI appropriate for filter by search terms and the search terms to be used by each with regard to such sources. It is understood by the Parties that ESI that does not have associated searchable text will not be considered an appropriate source for filter by search terms.

(2) **Custodians.** The Parties agree to identify in good faith the custodians most likely to have such relevant, responsive, non-duplicative information in their email accounts and individually maintained electronic files. The Parties agree to confer as to a limit on the number of custodians per producing Party from whom emails and individually maintained electronic files will be collected and reviewed for production in response to specific discovery requests propounded by the opposing Party. The Parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case.

For the avoidance of doubt, shared network drives or other shared data repositories determined to have responsive data will be collected and reviewed without regard to custodian.

(3) **Technology Assisted Review.**  The Parties agree to meet and confer regarding the use of any additional filtering method that employs technology assisted review to determine the relevancy of ESI.  To the extent the Parties reach such agreement, proven technology must be employed and adequate quality controls maintained.  Either Party may request additional information regarding the details of any workflow being employed upon a showing of special need.

c) **Duplicates.**  The Parties agree to remove duplicate emails, defined as emails having identical 128-bit MD5Hash values at the family level.  Only a single copy of an exact duplicate ESI family needs to be produced.  Deduplication can occur within a custodian and across custodians provided that each custodian in whose files a copy of such duplicate exists is identified.

d) **Timeframe.**

(1) **Rolling Production.**  The Parties will produce documents, including ESI, on a rolling production basis.  Such production should begin within a reasonable time after the response deadline. The Parties will communicate with each other about their respective priorities for production and agree to use good faith efforts to respond to reasonable requests for prioritized production, taking into account the volume of responsive information, its relative accessibility, efficiencies in the process of search and review, and additional processing time required for certain types of ESI.

2) **Form of Production.**

Except as provided herein, ESI and paper documents will be produced in single page, TIFF image format.  This format allows for proper viewing, numbering, endorsement and any necessary redaction and will work with most popular litigation software packages.  The Parties also agree to provide the appropriate standardized database load files (.DAT files) and image

load files (.OPT files) for their respective systems. Each Party will accommodate reasonable requests for production of images in color.

Additionally, to the extent practicable, each non-redacted ESI document produced shall be accompanied by a corresponding document-level text (.TXT) file with full text that is extracted from the electronic file, not generated as an Optical Character Recognition ("OCR") file from the TIFF image(s). In the case of email, the corresponding text file shall include header information including: (1) the individual to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("Subject"), (5) the date/time of the email (typically the "Sent Date/Time"). For redacted documents derived from ESI or paper documents, the producing party is responsible for generating and producing OCR text in the document-level text (.TXT) file.

Because much metadata is unusable and of little value and the time required to review the metadata makes its production burdensome and costly, the Parties will only agree to produce a limited amount of metadata absent a showing of special need. Nothing in this paragraph, however, obviates any Party's obligation to preserve metadata consistent with subparagraphs 1(a)(i) and (ii). With regard to emails, the following metadata fields should be produced: Custodian, From, To, CC, BCC, Date and Time Sent, Date and Time Received, Subject, Attachment ID Begin, Attachment ID End, MD5Hash. With regard to attachments or loose electronic documents, the following metadata fields should be produced: Custodian, File Name, Date Created, Date Last Modified, MD5Hash, Title, Author, Attachment ID Begin, Attachment ID End, and FilePath. With regard to paper documents, the Custodian must be provided.

3) **Organization of Production.**

(1) **Images**. Each image will be assigned a production ID number that will be used as the TIFF name and visibly endorsed on the image page. These production ID numbers shall be unique across the entire document production and sequential within a given document. A separate image cross-reference file in .TXT, .CSV, or .OPT format indicating the Document ID, Path, and File Name will be provided as part of each production.

When applicable, parent emails and any of their attachments should be produced as separate, contiguous documents and the parent-child relationships (the association between an attachment and its parent document) shall be preserved to the extent possible. Images of paper documents must include, where available, copies of file folders, envelopes, or labels or other identifying marks on the containers in which the documents were maintained.

The Parties agree that ESI produced as described herein is reasonably usable and is an acceptable alternative to organizing the images according to the categories in the document requests.

(2) **Metadata.** A separate metadata cross-reference file in .TXT, .CSV, or .DAT format will be provided as part of each production. A metadata field delimiter, that is unlikely to exist within the metadata fields themselves, will be used to separate fields. For those fields containing multiple entries (e.g., Recipients), a unique delimiter will be used to separate the multiple entries within a field.

In addition to the agreed upon metadata fields, the Parties will also produce source information and any applicable confidentiality designation for each document within the metadata cross-reference file.

**4) Exceptions.**

    **a) Dynamic Files.**

Certain files (such as spreadsheets, slide shows, etc.) can be so dynamic in nature that they may not be conducive to production in static image form. For this reason, spreadsheets will be produced as native files unless redactions are required. Spreadsheets that require redactions will be converted to TIFF images. Slide shows will be produced as native files unless redactions are required. Slide shows that require redactions will be converted to color TIFF images, any hidden slides will be revealed; and if any slides in the presentation contain speaker notes, then all slides will be printed in Slide view (one slide per page). To the extent that print-outs or images of all or part of a spreadsheet or presentation were also maintained in the ordinary course of business in static form (e.g., as a pdf attachment), those documents will be produced as static images.

With regard to other file types, the Parties agree that where there is a legitimate need to present content of the file that cannot be derived from a static image and/or optional full text, the producing Party shall produce these types of dynamic files in native form for review in the native application. In addition, the Parties agree to produce a reasonable number of particular, identified dynamic files in native format upon reasonable request from the receiving Party.

For native files included in a production, the file name will consist of a production ID number and the Confidentiality designation, if applicable, will be provided in the database load file. A corresponding placeholder TIFF image will also be provided and will reflect the document's production ID number and Confidentiality designation (if applicable).

**b) Structured Data.**

Some types of ESI, such as databases, exist natively as structured data repositories as opposed to unstructured individual file populations. A Party may at its option produce the relevant information from a database in an alternate form, such as a report or data table. These reports or data tables may, at the producing Party's option, be produced in either a static image

9

format or in a popular database application, such as an MS Access™ database. The Parties agree to produce a reasonable number of such reports or data tables in a popular database application, such as an MS Access™ database, upon reasonable request from the receiving Party, which shall identify the particular reports or data tables of interest. To the extent that relevant and responsive reports or data tables were also maintained in the ordinary course of business in static form, those documents will be produced as static images.

### c) Conversion not Practicable.

Due to the nature or complexity of storage of some ESI (*e.g.*, ESI in custom or proprietary applications, website content, etc.), conversion to static image form may be overly burdensome. The Parties reserve the right to produce this ESI in some other reasonably usable format that would not alter the content.

### d) Image Not Readable.

Where TIFF images of certain documents are not readable for whatever reason due to processing constraints, the Parties may request their production in native or other appropriate format.

### e) Non-Convertible Files.

For documents and ESI that do not convert well to TIFF (e.g. oversized drawings, picture files, audio and video files), the producing Party will either produce the document in native format or will ask the receiving Party to meet and confer regarding a reasonable alternative form of production. The file name for the documents produced in native form will consist of a production ID number. The Confidentiality designation, if applicable, will be indicated in the database load file. For native files included in a production, the corresponding placeholder TIFF image will also be provided and will reflect the document's production ID number and Confidentiality designation (if applicable). In the event that either Party produces

either an ESI or hard copy document that the TIFF image is of poor quality, obscured in some way or otherwise illegible, the Parties agree that the producing Party will make best efforts to help the receiving Party receive a more useful production of the document including but not limited to producing the native file.

Other files may not be amenable to TIFF conversion due to password protection, encryption or corruption (for example). If reasonable efforts to obtain useful TIFF images of these files are unsuccessful, these will also be accounted for with a placeholder image.

**(f) Source Code.**

Source code will be produced in accordance with the protocols set forth in the Stipulated Protective Order entered in this litigation.

**5) Privilege**

Each Party will review documents for privileged information (or other information subject to a recognized immunity from discovery) prior to production, and a Party may satisfy its review obligations through a reasonable electronic search for potentially privileged documents. Documents that contain both privileged and non-privileged information will be produced with the privileged information redacted in such a way as to show the location of the redaction within the document and the reason therefore (*e.g.,* "Redacted – Privileged" or *equivalent*). Documents or portions thereof withheld on privilege grounds will be identified in a privilege log in accordance with Fed. R. Civ. P. 26(b)(5), provided, however, that neither Party shall be required to log privileged documents that were created or received on or after the date of filing of the Complaint in the litigation. Additionally, portions of documents withheld on privilege grounds need not be identified in a privilege log as long as sufficient information remains on the face of the document to provide the opposing Party with the type of information that would otherwise be included on a privilege log entry.

Privilege logs will be produced within 45 days following the production of the documents from which the privileged documents are withheld.  The log shall contain the following information, to the extent known and to the extent providing this information will not destroy the privilege: (1) the name(s) of the person(s) who created and received the document or a copy of it; (2) the date of the document; (3) a description of the nature of the document sufficient to enable the receiving Party to assess the applicability of the privilege or protection; (4) privilege(s) claimed; and (5) the names and titles or designation as in-house or outside counsel of legal personnel on whom the claimed privilege is based.

**6) Right to Request Additional Information**

The agreements set forth herein are without prejudice to the right of a requesting Party to request additional information about ESI and discovery in accordance with the Federal Rules of Civil Procedure.

**7) Obligation to Produce Documents Responsive to Discovery Requests**

Nothing herein relating to the search for and production of electronic documents using identified custodians and search terms shall relieve the Parties of their obligation to reasonably search for and produce all discoverable documents responsive to discovery requests served in this litigation.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated: October 23, 2019

/s/ *Jennifer Itzkoff*
Jennifer Itzkoff (MA BBO No. 675694)
**WOMBLE BOND DICKINSON (US) LLP**
Independence Wharf
470 Atlantic Avenue, Suite 600
Boston, MA 02110
Telephone: (857) 287-3142
Jennifer.Itzkoff@wbd-us.com

David Greenbaum (admitted pro hac vice)
**Nuance Communications, Inc.**
1111 Macarthur Boulevard
Mahwah, NJ 07430
(857) 214-5524
david.greenbaum@nuance.com

Christian E. Mammen (admitted pro hac vice)
Carrie Richey (admitted pro hac vice)
**WOMBLE BOND DICKINSON (US) LLP**
1841 Page Mill Road, Suite 200
Palo Alto, CA 94304
Telephone: (408) 341-3067
Chris.Mammen@wbd-us.com
Telephone: (408) 341-3060
Carrie.Richey@wbd-us.com

Christine H. Dupriest (admitted pro hac vice)
**WOMBLE BOND DICKINSON (US) LLP**
271 17th Street, Suite 2400
Atlanta, Georgia 30363
Telephone: (404) 962-7538
Christine.Dupriest@wbd-us.com

Kristin Lamb (admitted pro hac vice)
**WOMBLE BOND DICKINSON (US) LLP**
811 Main Street, Suite 3130
Houston, TX 77002
Telephone: (919) 755-8124
Kristin.Lamb@wbd-us.com

***Counsel for Plaintiff Nuance Communications, Inc.***

/s/ *Kevin C. Adam*
Kevin C. Adam (SBN 684955)
**WHITE & CASE LLP**
75 State Street, 24th Floor
Boston, MA 02109
(617) 979-9300
Kevin.adam@whitecase.com

Dimitrios Drivas (pro hac vice pending)
Raj Gandesha ( admitted pro hac vice)
John Padro (pro hac vice pending)
Leon Miniovich (pro hac vice pending)
**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, NY 10020-1095
(212) 819-8286
ddriVas@whitecase.com
rgandesha@whitecase.com
 jpadro@whitecase.com
lminioVich@whitecase.com

Hallie Kiernan (admitted pro hac vice)
**WHITE & CASE LLP**
3000 El Camino Real
Two Palo Alto Square, Suite 900
Palo Alto, CA 94306
(650) 213-0300
hallie.kiernan@whitecase.com

***Counsel for Defendant Omilia Natural Language Solutions, Ltd.***

PURSUANT TO STIPULATION, IT IS SO ORDERED

DATED: 2/7/2020  /s/ Patti B. Saris
Judge Patti B. Saris
United States District Court
District of Massachusetts