# EXHIBIT G

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **SYNKLOUD TECHNOLOGIES, LLC**<br><br>Plaintiff,<br><br>v.<br><br>**NUANCE COMMUNICATIONS, INC.**<br><br>Defendant. | Case No. 1:20-cv-10564-PBS<br><br>**NUANCE COMMUNICATION'S ANSWER AND COUNTERCLAIMS** |

**NUANCE COMMUNICATION'S ANSWER AND COUNTERCLAIMS**

Defendant Nuance Communications, Inc. ("Nuance") hereby respectfully answers Plaintiff's Complaint. (Dkt. No. 1).

**NATURE OF THE ACTION**

1. Admit that SynKloud has filed a patent infringement suit against Nuance, asserting United States Patent No. RE 44,248 (the "'248 patent" or "Patent"). Admit the title and inventor name appear to accurately reflect the information on the face of said patent. Deny that the '248 patent was duly and legally issued.

**THE PARTIES**

2. Nuance lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies same.

3. Admitted.

**JURISDICTION AND VENUE**

4. Admitted.

5. Admitted.

6. Admit that jurisdiction is proper in this district as Defendant resides in this District. As to the remaining allegations, denied.

7. Admit that venue is proper in this District as Defendant resides in this District. As to the remaining allegations, denied.

## BACKGROUND

8. Admit as to all facts except that the '416 patent was duly and legally issued.

9. Admit as to all facts except that the '248 patent was duly and legally issued.

10. Admitted.

11. Whether or not Darrell A. Poirier is an inventor is a legal determination. Nuance lacks knowledge or information sufficient to form a belief about the truth of this allegation, and therefore denies same.

12. Nuance lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies same.

13. Nuance lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies same.

14. Nuance lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies same.

15. Nuance lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies same.

## ACCUSED PRODUCTS AND/OR SOFTWARE

16. Admit that Nuance sells Dragon Premium, Dagon Professional, and Dragon Legal. As to the remainder of the allegations in this paragraph, denied.

## ACTUAL NOTICE AND KNOWLEDGE OF THE PATENT-IN-SUIT

17. Admit that, in 2015, Nuance was shown the '248 patent. As to the remainder of the allegations, denied.

18. Admit that, in 2015, Nuance was shown the '248 patent. Admit that Nuance was provided the '248 patent with the Complaint. As to the remainder of the allegations, denied.

## COUNT I: INFRINGEMENT OF US PATENT NO. RE 44,248

19. This paragraph does not contain allegations. Thus, no response is required.

20. Admit except that the '248 patent was duly and legally issued.

21. Denied.

22. This paragraph does not contain allegations. Thus, no response is required.

23. Denied.

24. This paragraph violates FRCP 10(b). Many of the terms in this paragraph need to be construed prior to the possibility of an admission or denial. Thus, Nuance lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies same.

25. Many of the terms in this paragraph need to be construed prior to the possibility of an admission or denial. Thus, Nuance lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies same.

26. Denied.

27. Denied.

28. Denied.

29. Denied.

30. Denied.

31. Denied.

32. Denied.

## PRAYER FOR RELIEF

Nuance denies that SynKloud is entitled to any relief requested.

## NUANCE'S COUNTERCLAIMS

### THE PARTIES

1. Counterclaim Plaintiff Nuance is a Delaware corporation with its principal place of business in this District.

2. Counterclaim Defendant SynKloud is a Delaware corporation, formed on July 30, 2018.

### JURISDICTION AND VENUE

3. Jurisdiction is proper because Nuance's counterclaims are mandatory under Federal Rule of Civil Procedure 13 ("Rule 13") and SynKloud filed its complaint in this District.

4. Venue is proper as Nuance resides in this District and SynKloud filed its complaint in this District.

### BACKGROUND

*The Claimed Ideas Existed Long Before the '248 Patent and Were Invented by Nuance, Not SynKloud*

5. The asserted '248 patent issued on May 28, 2013, from a reissue application filed on March 30, 2012. The '248 patent discloses transferring voice model data from one computer to another. (5:50-67).

6. Specifically, the '248 patent describes the ability to transfer certain files and data from one machine to another using media such as a disk, optical disk, floppy, or network. The Patent calls this ability "Voice Model Mobility" (VMM). (6:36-39).

7. The '248 patent provides that the invention was conceived "due to the problem of having to train multiple voice recognition dictation machines for a single person's voice." (5:52-54).

Case 1:20-cv-11365-PBS Document 30-7 Filed 07/9/20 Page 6 of 12
Case 1:20-cv-11365-PBS Document 31-7 Filed 07/9/20 Page 6 of 12

To address this issue, the '248 patent suggests that rather than train on the second computer, it would be better to move the voice files from the first computer to the second computer. (5:56-60).

8. But the ability to transfer voice files from one computer to another long existed before the priority date of the '248 patent.

9. Indeed, the '248 patent concedes that all it "took was some trial and error" to move files from a source computer to a destination. (6:19-23).

10. And, the '248 patent admits that the inability to move files was not even due to a technical limitation but just a matter of understanding how Dragon Professional stored its files. (6:7-9, 6:28-30).

11. For broader context about the age of these ideas, the study of automatic speech recognition and transcription began in 1936 with AT&T's Bell Labs.

12. Dragon Systems, Inc. ("Dragon") was founded in 1982 by James and Janet Baker.

13. In 1986, Dragon was awarded the first of a series of contracts from DARPA to advance large-vocabulary, speaker-independent continuous speech recognition, and by 1988, Dragon conducted the first public demonstration of a PC-based discrete speech recognition system.

14. In 1990, Dragon demonstrated a 5,000-word continuous speech system for PCs and introduced DragonDictate 30K, the first large-vocabulary, speech-to-text system for general-purpose dictation. It allowed control of a PC using voice commands only and found acceptance among the disabled.

15. In 1991, Dragon received a contract from DARPA for work on machine-assisted translation systems, and in 1993, Dragon received a federal Technology Reinvestment Project award to develop, in collaboration with Analog Devices Corporation, continuous speech and voice recognition systems for desktop and hand-held personal digital assistants (PDAs). Dragon demonstrated PDA speech recognition in the Apple Newton MessagePad 2000 in 1997.

16. By July 1997, Dragon had launched Dragon NaturallySpeaking ("DNS"), a continuous speech and voice recognition program for general-purpose use with a vocabulary of 23,000 words.

17. Nuance Communications, Inc., was founded in 1994 as a spin-off of SRI International's Speech Technology and Research (STAR) Laboratory to commercialize the speaker-independent speech recognition technology developed for the US government at SRI.

18. Nuance deployed their first commercial large-scale speech application in 1996.

19. Nuance acquired Dragon in 2000.

Nuance Answer and Counterclaims

5

20. Nuance is the world leader in speech recognition and artificial intelligence technologies.

***The Provisionals Do Not Create Priority for the '248 Claims***

21. Plaintiff SynKloud was formed as a Delaware corporation on July 30, 2018.

22. Robert Colao is the president of SynKloud and has an ownership interest in SynKloud.

23. Named inventor Poirier has an ownership interest in SynKloud.

24. The asserted Patent was assigned to SynKloud on November 15, 2019. The assignor was General Voice, Inc.

25. General Voice was formed as a Massachusetts corporation on September 1, 2002.

26. Named inventor Poirier was a director of General Voice in September 2002.

27. On September 29, 1999, Poirier, through counsel Gerry Blodgett, filed US Provisional Application No. 60/156,638 (the "'638 Application").

28. The '638 Application does not contain the term *enrollment*.

29. The '638 Application does not contain the term *enroll*.

30. Indeed, most of the ideas in the asserted claims in the '248 patent do not exist in the '638 Application.

31. The '638 Application defines a voice model as "a computer recognized voice of an individual person or noise."

32. On June 28, 2000, Poirier, through his counsel, filed US Provisional Patent Application No. 60/214,504 (the "'504 Application").

33. The '504 Application does not contain the term *enrollment*.

34. The '504 Application does not contain the term *enroll*.

35. Indeed, most of the ideas in the asserted claims in the '248 patent do not exist in the '504 Application.

**COUNTERCLAIM 1: INEQUITABLE CONDUCT**

36. Paragraphs 1-35 are incorporated by reference herein.

37. In 2004, General Voice merged with National Voice LLC.

38. Poirier worked at both General Voice and National Voice.

39. National Voice was a reseller of Dragon products, including Dragon Professional with medical and legal vocabularies.

40. General Voice was a reseller of Dragon products, including Dragon Professional with

medical and legal vocabularies.

41. As resellers, National Voice and General Voice were in possession of all then-existing Dragon user's guides, including DragonDictate User's Guide 2.0 ("DragonDictate_REF").

42. DragonDictate_REF is a manual prepared by Dragon in 1993 to provide instructions on using "DragonDictate 30K Version 2.0, a breakthrough speech recognition product." (Exh. A, p. 11). DragonDictate_REF discloses various information for using the DragonDictate 2.0 software. This disclosure includes installing the DragonDictate 2.0 software, (*id.*, pp. 16-23), enrolling a new user, (*id.*, pp. 27-28), loading voice files of an existing user, (*id.*, p. 29), running a tutorial to generate personalized information, (*id.*, pp. 29-32), and other features.

43. In the '638 Application, Poirier admits that he and his colleagues at General Voice's predecessor (National Voice) searched Dragon's website for known problems.

44. Prior to September 1999, a user could move Dragon voice files from one computer to the next as long as the username on the second computer was exactly the same as the username on the first computer.

45. Prior to September 1999, the FAQs on Dragon's website ("DragonDictate_FAQ," attached as Exh. B) explained how to transfer user files from one computer to another.

46. Prior to September 1999, Poirier knew that a user could move Dragon voice files from one computer to the next as long as the username on the second computer was exactly the same as the username on the first computer.

47. Prior to September 1999, Poirier had seen DragonDictate_FAQ on Dragon's website.

48. During the pendency of the application that matured into the '416 patent and '248 reissue, Poirier never disclosed DragonDictate_FAQ to the USPTO.

49. DragonDictate_REF and DragonDictate_FAQ provided step-by-step instructions to transfer voice model files.

50. The '248 would not have originally issued nor reissued but for Poirier decision to withhold the DragonDictate_REF and DragonDictate_FAQ references.

51. Using asserted Claim 29 as an example:

52. To the extent the preamble is limiting, DragonDictate_REF discloses the preamble. DragonDictate_REF describes a speech recognition program installed on a computer (e.g., a source computer) for performing speech-to-text conversion. (Exh. A, pp. 11, 16). The computer readable non-transitory medium comprises the source computer hard drive and the program instructions

including all software and operating systems on that hard drive. DragonDictate_REF teaches an enrollment process using a unique name. (*Id.* at p. 28) ("Type a unique name of up to eight characters"). Once enrolled, DragonDictate_REF describes creating user-specific voice files through training and other means of personalization and storing them in a folder associated with the user. (*Id.*) ("DragonDictate loads a new set of voice files").

53. DragonDictate_REF discloses Claim 29(a), "record the user's voice model files and enrollment entries[.]" DragonDictate_REF discloses recording a user's voice model files and enrollment entries. (Exh. A, p. 27) ("When you dictate, DragonDictate adapts to your speaking style and pronunciation, and stores this information in your voice files."); (*id.* at pp. 27-28) (disclosing steps for creating a specific user name for saving voice files); (*id.* at pp. 40-41) (describing a process for storing personalized information in the user-specific voice files); (*id.* at pp. 65-98) (teaching steps for creating and using macros).

54. DragonDictate_REF discloses Claim 29(b), "store the user's voice model files and enrollment entries in recoverable form as the user's Voice Model[.]" DragonDictate_REF discloses storing voice model files and enrollment entries in recoverable form. DragonDictate_REF teaches that a user may load a pre-existing user profile – e.g., "type dd carolyn." (Exh. A, pp. 29, 41). Alternatively, DragonDictate_REF teaches that a user may revert to a saved point. (*Id.* at pp. 108-109). DragonDictate_REF discloses loading macros. (*Id.* at pp. 102-103).

55. DragonDictate_FAQ discloses Claim 29(c), "transfer the user's stored Voice Model to a destination computer, the destination computer including a destination installation of the speech recognition computer program[.]" DragonDictate_FAQ specifically teaches transferring a voice model (e.g., voice files) from a source computer to a destination computer. DragonDictate_FAQ describes specific steps for the transfer. The first step relates to selecting a drive. (Exh. B, p. 4) ("change to the drive where DragonDictate is installed"). The second step relates to locating voice files to transfer. (*Id.*) ("Go to the CURRENT directory for the voice files you want to move using the cd command."). The third step is directed to storing the voice files in a transfer medium such as floppy disks. (*Id.* at p. 5) ("Type PKZIP -& A:\username *.* <enter> PKZIP will prompt for additional blank floppies as it fills them up. You will need at least 2 diskettes."). Through these steps, the source computer creates a PKZIP file containing the voice files that will interface with PKUNZIP command at a destination computer to load the voice files to the speech recognition program.

56. DragonDictate_FAQ further describes the steps for loading the transferred data on a destination computer. A user creates "an identical username" on the destination computer. (Exh. B, p. 5). Using MSDOS, the user selects the directory for storing the transferred voice files. (*Id.*). Then the user accesses the transfer medium (e.g., floppy disks) and copies the voice files into the directory of the speech recognition program by using PKUNZIP. (*Id.*).

57. DragonDictate_FAQ and DragonDictate_REF disclose Claim 29(d), "wherein the transfer of the user's Voice Model to the destination computer enables the destination computer to enroll the user into the speech recognition computer program on the destination computer and increases the accuracy of the speech recognition computer program on the destination computer." A person of ordinary skill in the art ("POSITA") would have understood that transferring a user's voice model using the steps outlined in DragonDictate_FAQ enables the destination computer to enroll the user into the speech recognition program on the destination computer because the user does not need to go through the personalization step, which is required for the speech recognition program when a new username is created. When a new username is created, "DragonDictate loads a new set of voice files and instructs you to begin the tutorial," (Exh. A, p. 28), but when loading the voice files transferred from the source computer to the destination computer, the user is instructed to "[s]kip the Quick Training and the tutorial." (Exh. B, p. 5). The transferred files already include user-specific information. (Exh. B, p. 4). Accordingly, the transfer of the existing voice model improves accuracy of the speech recognition program (e.g., DragonDictate 2.0) installed in the destination computer.

58. As shown with exemplary Claim 29, DragonDictate_REF and DragonDictate_FAQ alone and in combination invalidate the claims of the '248 Patent. Thus, the '248 would not have issued but for Poirier's intentional withholding.

59. These facts are sufficient to support the conclusion that Poirier withheld the DragonDictate_REF and DragonDictate_FAQ references with the intent to deceive the USPTO.

## COUNTERCLAIM 2: SECTION 102 AND 103 INVALIDITY

60. Paragraphs 1-59 are incorporated by reference herein.

61. The asserted '248 patent is invalid pursuant to Sections 102 and 103 of the Patent Code.

62. For example, for the reasons stated in paragraphs 40-59, above, DragonDictate_REF and DragonDictate_FAQ are Section 102 and 103 references.

**COUNTERCLAIM 3: SECTION 112 INVALIDITY**

63. Paragraphs 1-62 are incorporated by reference herein.

64. The asserted claims of the '248 patent fail to meet the written description and enablement requirements of Section 112 of the Patent Code.

65. For example, the specification of the '248 does not contain the alleged innovations in dependent claim nos. 32-33, 37-38, triggering (and failing) the requirements that the specification contain a written description and enable a POSITA to create the alleged innovations in those claims.

**COUNTERCLAIM NO. 4: SECTION 101 INVALIDITY**

66. Paragraphs 1-65 are incorporated by reference herein.

67. The asserted claims of the '248 patent are drawn toward patent ineligible subject matter as they are abstract and fail to contain an inventive concept sufficient to transform their abstract subject matter.

68. Using asserted Claim 29 as an example, the operations of Claim 29 are drawn toward abstract subject matter, specifically the abstract idea of moving information from one computer to another.

69. Further, there is no inventive step sufficient to save Claim 29. Indeed, the patent admits the operations were routine.

70. And while the Examiner did issue the claims after a Section 101 rejection, those claims issued and reissued before *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014).

71. Indeed, after *Alice*, SynKloud had a duty to reevaluate the patent eligibility of the claims of the '248 patent prior to assertion.

72. The failure to do so subjects SynKloud and its counsel to fees pursuant to Sections 285 and 1927.

**REQUEST FOR JURY TRIAL**

Nuance requests a jury trial for all issues so triable.

**PRAYER FOR RELIEF**

Nuance respectfully requests the following relief:

1. an order invalidating all asserted claims;
2. an order finding the asserted claims unenforceable;
3. an order finding the accused products do not infringe the asserted claims; and
4. an award of all fees and costs pursuant to 35 U.S.C. §285 and 29 U.S.C. §1927.

Nuance Answer and Counterclaims

10

Respectfully submitted,

*/s/ Rachael D. Lamkin*
Rachael D. Lamkin (Cal. Bar #246066)
(admitted *pro hac vice* on 6/18/20)
Lamkin IP Defense
655 Montgomery St., 7th Floor
San Francisco, CA 94111
916.747.6091
RDL@LamkinIPDefense.com

*/s/ Briana R. Cummings*
Briana R. Cummings (BBO #692750)
Branch Legal LLC
31 Church St., Suite 3
Winchester, MA 01890
781.325.8060
781.240.6486 (fax)
briana@branchlegal.com

**Attorneys for Defendant
Nuance Communications, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of June, 2020, a true and accurate copy of the above and foregoing

**NUANCE COMMUNICATION'S ANSWER AND COUNTERCLAIMS**

was filed with the Court's CM/ECF system, which provides service to all counsel of record.

*/s/ Briana R. Cummings*
Briana Cummings