# IN THE UNITED STATES DISTRICT COURT FOR

# THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NUANCE COMMUNICATIONS, INC., <br><br>         Plaintiff and Counterclaim <br>        Defendant, <br><br>    v. <br><br> OMILIA NATURAL LANGUAGE <br> SOLUTIONS, LTD., <br><br>         Defendant and Counterclaim <br>        Plaintiff. | **Case No. 1:19-cv-11438-PBS** |

## <u>NUANCE COMMUNICATIONS, INC.'S OPPOSITION TO OMILIA'S MOTION TO DISMISS COUNTS IX-XIII OF THE FIRST AMENDED COMPLAINT</u>

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................1

II.    FACTUAL BACKGROUND RELEVANT TO THE NEW CLAIMS ASSERTED IN THE FIRST AMENDED COMPLAINT..................................................................2

    A.    Nuance and Omilia's Prior Business Agreements .......................................2

    B.    Facts Causing Nuance to Conduct Further Inquiry......................................3

III.    ARGUMENT ...........................................................................................................4

    A.    Legal Standards.............................................................................................4

    B.    Nuance's Copyright Infringement Cause of Action States a Valid Claim ................5

        1.    Nuance's Copyright Claim is Not Time-Barred .................................5

        2.    Nuance's Additional Copyright Claims Are Sufficient .....................8

        3.    The Court Should Disregard Omilia's Additional Materials............8

    C.    Nuance's DMCA Cause of Action States a Valid Claim ............................9

    D.    Nuance's CFAA Cause of Action States a Valid Claim............................13

    E.    Nuance's State Law Claims Are Timely and Not Preempted..................16

        1.    Both State Law Claims Are Subject to the Discovery Rule ............16

        2.    Nuance's Trespass to Chattels Claim is Not Preempted.................17

        3.    Nuance's Conversion Claim is Not Preempted .............................17

    F.    Nuance's Prayer for Statutory Damages and Attorneys' Fees is Proper .................18

    G.    In the Alternative, the Court Should Grant Leave to Amend ...................18

IV.    CONCLUSION......................................................................................................19

TABLE OF AUTHORITIES

**Cases**

*321 Studios v. Metro Goldwyn Mayer Studios, Inc.*,
  307 F. Supp. 2d 1085 (N.D. Cal. 2004) ................................................................. 12

*VB Conversions, LLC v. Exida LLC*,
  No. CV13-8306-PSG-JEMX, 2014 WL 12561086 (C.D. Cal. July 17, 2014).......... 6

*TLS Grp., S.A. v. NuCloud Global, Inc.*,
  No. 2:15-CV-00533-TC,2016 WL 1562910 (D. Utah Apr. 18, 2016) .................... 13

*Actuate Corp. v. Int'l Bus. Machs. Corp.*,
  No. C-09-05892 JCS, 2010 WL 1340519 (N.D. Cal. Apr. 5, 2010) ...................... 13

*Armstrong v. Virgin Records, Ltd.*,
  91 F. Supp. 2d 628 (S.D.N.Y. 2000)......................................................................... 9

*Belkin v. Fox*, No. CIV.A. 15-11582-RGS,
  2015 WL 3616094 (D. Mass. June 9, 2015) ............................................................. 4

*Blackstone Realty LLC v. F.D.I.C.*,
  244 F.3d 193 (1st Cir. 2001)..................................................................................... 4

*Blake v. Prof'l Coin Grading Serv.*,
  898 F. Supp. 2d 365 (D. Mass. 2012) ..................................................................... 16

*Bowen v. Eli Lilly & Co.*,
  408 Mass. 204 (1990) .............................................................................................. 16

*Cambridge Plating Co. v. Napco, Inc.*,
  991 F.2d 21 (1st Cir. 1993)...................................................................................... 16

*Cassetica Software, Inc. v. Computer Scis. Corp.*,
  09-cv-0003, 2009 WL 1703015 (N.D. Ill. Jun. 18, 2009) ...................................... 17

*CoxCom, Inc. v. Chaffee*,
  536 F.3d 101 (1st Cir. 2008)................................................................................... 12

*DISH Network LLC v. Barnaby*,
  No. 3:15-CV-492-TAV-HBG, 2016 WL 6603202 (E.D. Tenn. Nov. 8, 2016)....... 12

*DISH Network LLC v. DiMarco*,
    No. 2:11-CV-01962, 2012 WL 917812 (D. Nev. Mar. 14, 2012) ........................................... 12

*Dunlap v. G & L Holding Grp., Inc.*,
    381 F.3d 1285 (11th Cir.2004) ........................................................................................... 18

*DynaStudy, Inc. v. Houston Indep. Sch. Dist.*,
    325 F. Supp. 3d 767 (S.D. Tex. 2017) ................................................................................. 9

*eBay, Inc. v. Bidder's Edge, Inc.*,
    100 F. Supp. 2d 1058 (N.D. Cal. 2000) ............................................................................. 17

*EF Cultural Travel BV v. Zefer Corp.*,
    318 F.3d 58 (1st Cir. 2003) ................................................................................................ 16

*Egilman v. Keller & Heckamn, LLP*,
    401 F. Supp. 2d 105 (D.D.C. 2005) ............................................................................. 11, 13

*Estes Forwarding Worldwide LLC v. Cuellar*,
    239 F. Supp. 3d 918 (E.D. Va. 2017) ................................................................................ 15

*Glass Egg Digital Media v. Gameloft, Inc.*,
    No. 17-CV-04165-MMC, 2018 WL 3659259 (N.D. Cal. Aug. 2, 2018) ........................ 17, 18

*Grace v. Apple, Inc.*,
    328 F.R.D. 320 (N.D. Cal. 2018) ....................................................................................... 16

*Grant Heilman Photography, Inc. v. McGraw-Hill Glob. Educ. Holdings, LLC*,
    No. CV 17-694, 2018 WL 3193706 (E.D. Pa. June 28, 2018) .............................................. 18

*I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*,
    307 F. Supp. 2d 521 (S.D.N.Y. 2004) ................................................................................ 13

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009) ........................................................................................... 15

*M-I LLC v. Stelly*,
    733 F. Supp. 2d 759 (S.D. Tex. 2010) ........................................................................... 16, 18

*Microsoft Corp. v. EEE Bus. Inc.*,
    555 F. Supp. 2d 1051 (N.D. Cal. 2008) ............................................................................. 12

*MOCA Sys., Inc. v. Bernier*,
    No. CIV.A. 13-10738-LTS, 2013 WL 6017295 (D. Mass. Nov. 12, 2013) ........................... 14

*Monsarrat v. Zaiger*,
    286 F. Supp. 3d 253 (D. Mass. 2017) ................................................................. 4, 6

*Monsarrat v. Zaiger*,
    303 F. Supp. 3d 164 (D. Mass. 2018) ................................................................. 7, 8

*Moore v. Valle Auto Mall, Inc.*,
    92 Mass. App. Ct. 1117, 2017 WL 6002817 (Mass. App. Dec. 5, 2017)................................ 16

*Oyster Software, Inc. v. Forms Processing, Inc.*,
    No. C-00-0724-JCS, 2001 WL 1736382 (N.D. Cal. Dec. 6, 2001).......................................... 17

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. 663 (2014)......................................................................................... 6

*Quantlab Techs. Ltd. (BVI) v. Godlevsky*,
    719 F. Supp. 2d 766 (S.D. Tex. 2010) ................................................................. 13

*Quantlab Techs. Ltd. (BVI) v. Godlevsky*,
    No. 4:09-cv-4039, 2015 WL 1651251 (S.D. Tex. Apr. 14, 2015)........................................ 13

*Real View, LLC v. 20-20 Techs., Inc.*,
    789 F. Supp. 2d 268 (D. Mass. 2011) ............................................................. 12, 13

*Rivera v. Marriott Int'l, Inc.*,
    No. CV 19-1894 (GAG), 2020 WL 1933968 (D.P.R. Apr. 22, 2020)............................... 5, 8, 9

*Rosen v. Netfronts, Inc.*,
    No. CV 12-658 CAS FFMX, 2013 WL 3467205 (C.D. Cal. July 9, 2013) ............................ 18

*Ruiz v. Bally Total Fitness Holding Corp.*,
    496 F.3d 1 (1st Cir. 2007)....................................................................... 4, 7, 14, 15

*Satterwhite v. Image Bank, Inc.*,
    01-cv-7097, 2002 U.S. Dist. LEXIS 17584, at *5-6 (S.D.N.Y. Sep. 16, 2002) ........................ 7

*Seals v. Compendia Media Grp.*,
    290 F. Supp. 2d 947 (N.D. Ill. 2003) ................................................................. 7

*Segura v. Sofa Entm't, Inc.*,
    No. 3:16-cv-0938-AC, 2017 WL 2532211 (D. Or. June 9, 2017)........................................ 18

*Sewell v. Bernardin*,
    795 F.3d 337 (2d Cir. 2015)....................................................................... 13

*Synopsys, Inc. v. InnoGrit Corp.*,
No. 19-CV-02082-LHK, 2019 WL 4848387 (N.D. Cal. Oct. 1, 2019) ................................... 12

*Tactical Pers. Leasing, Inc. v. Hajduk*,
No. CV 18-203, 2018 WL 4740195 (W.D. Pa. Oct. 2, 2018) ................................ 14

*Taygeta Corp. v. Varian Assocs., Inc.*,
436 Mass. 217 (2002) ........................................................................ 16

*Tech Sys., Inc. v. Pyles*,
630 F. App'x 184 (4th Cir. 2015) ........................................................ 15

*Tomaselli v. Beaulieu*,
967 F. Supp. 2d 423 (D. Mass. 2013), aff'd .............................................. 16

*Torres-Negron v. Rivera*,
No. CIV. 02-1728 (HL), 2005 WL 1308675 (D.P.R. May 18, 2005) ....................... 9

*Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*,
524 F.3d 315 (1st Cir. 2008) ........................................................... 5

*U.S. Marine Surveyors, Inc. v. Reiner*,
No. CV 16-5360 PA (FFMX), 2016 WL 9138056 (C.D. Cal. Aug. 25, 2016) ....................... 18

*United States v. Shahulhameed*,
629 F. App'x 685 (6th Cir. 2015) ........................................................ 15

*United States v. Steele*,
595 F. App'x 208 (4th Cir. 2014) ........................................................ 15

*Universal City Studios, Inc. v. Corley*,
273 F.3d 429 (2d Cir. 2001) ........................................................ 10, 11

*Universal City Studios, Inc. v. Reimerdes,*
111 F. Supp. 2d 294 (S.D.N.Y. 2000) .................................................. 11

*Warren Freedenfeld Assocs., Inc. v. McTigue*,
531 F.3d 38 (1st Cir. 2008) .................................................... passim

**Statutes**

17 U.S.C. § 507(b) ........................................................................ 10

17 U.S.C. § 1201 ........................................................................ 10

17 U.S.C. § 1201(a) ........................................................................................................ 12

17 U.S.C. § 1201(a)(1) .................................................................................................... 13

17 U.S.C. § 1201(a)(1)(A) .............................................................................................. 10

18 U.S.C. § 1030(g) ........................................................................................................ 13

18 U.S.C. §§ 1030(a)(4), -(e)(6) ..................................................................................... 16

**Rules**

Fed. R. Civ. P. 15 ........................................................................................................... 19

Fed. R. Civ. P. 56(d) ........................................................................................................ 8

I.      **INTRODUCTION**[1]

Before 2014, Omilia, a Cyprus-based startup, lacked its own automatic speech recognition ("ASR") software and contracted with Nuance to be a reseller of its ASR software. In 2014 Nuance terminated its 2011 Partnership Agreement with Omilia, but Omilia continued to offer ASR.   Nuance generally suspected this was possible because Omilia had somehow inappropriately used its pre-2014 access to Nuance's ASR products through misuse of licenses to Nuance software—including under-reporting of license volumes and misuse of Nuance evaluation licenses.  This suspicion is reflected in Nuance's correspondence to Omilia from that time.  The Omilia misconduct Nuance uncovered in the spring of 2020 is different in kind.

In July 2019, when Nuance sued Omilia for patent infringement, Omilia filed a meritless motion to dismiss, disputing both service of process and personal jurisdiction.  At the October 30, 2019 hearing, Omilia conceded service had been properly effected.  D.N. 41 at 4.  The Court remarked that Omilia's service argument "felt like playing a shell game. … I don't want to play that game.  I mean, it just starts me off on a bad foot with this company."  D.N. 41 at 13-14. Omilia also conceded it fell within the Massachusetts long-arm statute.  *Id.* at 4. Ultimately, on the narrow issues remaining, the Court denied Omilia's motion to dismiss, noting, "Omilia's argument that it is burdened simply because it is a foreign corporation without an office here is unconvincing, especially considering it previously maintained an office and attended a conference in the state."  D.N. 46 at 13-15.  Omilia's current motion is equally meritless.

In recent months, Omilia made a number of disclosures that led Nuance to discover that the scope and nature of Omilia's cheating on the back of Nuance's labors was both different and more extensive than Nuance imagined.  Rather than—or in addition to—its cheating by misusing Nuance's software and licenses, it turns out that someone using the login of Omilia's CEO, Dimitris Vassos, accessed Nuance's servers in Massachusetts *after* the 2011 Partner Agreement

---

[1] Omilia opens its motion with comments about the timing of Nuance's First Amended Complaint ("FAC").  Mot. at 1.  But Omilia consented to its filing.  D.N. 96.  Therefore, any objection to the propriety or timing of the FAC is waived.

was terminated, but *before* Omilia started working on its own ASR product, and downloaded *hundreds* of copies of Nuance software, including updated versions of Nuance's speech recognizer as well as dozens of language modules.[2] Each of these language modules has many files, covering grammars, acoustic models, configuration, language supplements files, and release notes, that enable the Nuance ASR software to recognize speech in that language. This new discovery brought into sharp focus *how* Omilia was able to develop and launch speech recognizers in many languages in the span of just a few years. *Compare* FAC ¶ 45 (listing languages) *with* ¶ 46 (listing languages). Omilia had copies of all of Nuance's language packs, enabling it to shortcut the normal development process. FAC ¶ 32. This important discovery is why Nuance filed the FAC.

Omilia has again filed a meritless motion to dismiss. Its primary argument is that it should not be held to account for its wholesale looting of Nuance's speech recognition software because Nuance didn't catch Omilia fast enough. But Omilia fails to accept as true the factual allegations in the FAC supporting the application of the "discovery rule" to delay accrual of the statutes of limitations for Nuance's claims. By disregarding this basic rule of pleading, Omilia has again needlessly multiplied the burden on the Court.

Omilia's remaining arguments fare no better. Each cause of action properly states a claim for relief. Omilia's motion should be denied in its entirety.

## II.   FACTUAL BACKGROUND RELEVANT TO THE NEW CLAIMS ASSERTED IN THE FIRST AMENDED COMPLAINT

### A.   Nuance and Omilia's Prior Business Agreements

Nuance is an industry leader in providing voice recognition software with its signature

---

[2] As detailed in the FAC, the languages downloaded by Omilia included US English, Canadian French, Arabic, Hebrew, Afrikaans, South Africa English, UK English, India English and a dozen other languages from India, Thai, Japanese, Korean, Mandarin (separately for Taiwan and China), different Spanish language packs for Spain, US, Argentina, Colombia, and many more. FAC ¶ 40. This list of languages goes far beyond the handful of southern and eastern European languages served by Omilia under the 20111 Partner Agreement. *See* FAC ¶¶ 26, 45.

ASR technology that is provided to customers through its Nuance Recognizer software.  Omilia was a reseller of Nuance software starting as early as 2002.  FAC ¶ 17.  Nuance and Omilia continued this relationship in 2011 via a Partner Agreement ("2011 Partner Agreement") where Omilia was granted the right to act as a strategic partner of Nuance with primary focus on Greece, Turkey, Cyprus, Russia, Ukraine, and Belarus.  *Id.* ¶ 21.  The 2011 Partner Agreement included an Evaluation and Demonstration License allowing Omilia to "internally evaluate and test the software" and to "build application(s) incorporating the Software for evaluation, prototyping and demonstration purposes only." *Id.* ¶ 22.  Nuance retained all copyrights in the software and further, the agreement expressly forbade any unauthorized copying of the software. *Id.* The 2011 Partner Agreement terminated on January 31, 2014.  *Id.* ¶ 25.

### B.    Facts Causing Nuance to Conduct Further Inquiry

Omilia has stated that upon termination of the 2011 Partnership Agreement in early 2014 it "decided to develop its own ASR technology."  *Id.* ¶ 31.  Omilia then proceeded to bring to market a product implementing ASR technology in record time.  By comparison, Nuance and other companies competing in the same market required significantly more resources, time, and experienced staff dedicated to developing their own platforms.  *Id.* ¶ 32.  The implausible speed of Omilia's product development led Nuance to suspect that Omilia took advantage of its role as a Nuance reseller to short-cut its ASR development process, but Nuance had no information or evidence suggestive of any specific wrongdoing by Omilia other than a hunch.  *Id.* ¶ 33.  Until Nuance conducted its recent investigation, prompted by Omilia's disclosures, Nuance was unaware that Omilia had downloaded hundreds of files of proprietary Nuance software—from servers located in Massachusetts—after termination of the 2011 Partner Agreement.

On January 19, 2018, Nuance sent Omilia a demand to audit Omilia's records regarding Omilia's compliance with its obligations under the 2011 Partner Agreement.  Omilia refused.  *Id.* ¶ 34.  More recently, on March 4, 2020, Omilia filed a Statement of Claim before the Ontario Superior Court of Justice in *Omilia Natural Language Solutions, Ltd. v. Nuance*

*Communications, Inc.*, CV20006374350000 ("Canadian Complaint") (D.I. 78).  Paragraph 43 of the Canadian Complaint states, "Given the *data Omilia had the foresight to collect on prior projects*, it was able to develop a high performing ASR technology." (emphasis added).  Further, on April 15, 2020, in supplemental interrogatory responses, Omilia further explained that "Omilia NLS was able to quickly build the omASR versions by utilizing . . . (ii) the training data that *Omilia NLS had collected over the years* from its customers."  FAC ¶ 37 (emphasis added).

This remarkable admission caused Nuance to conduct further investigations to determine what "data" Omilia had "collected."  This led to the discovery of logfiles showing that after the effective date of the termination on January 31, 2014, Omilia downloaded **hundreds** of Nuance files, including language packs for dozens of languages and products that it had never purchased or licensed from Nuance.  These files were downloaded using Omilia's CEO's login.  *Id.* ¶ 40.

## III.   ARGUMENT

### A.   Legal Standards

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give ... plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007).  On a motion to dismiss for failure to state a claim that raises an affirmative defense such as the statute of limitations, "the facts establishing the defense must be clear on the face of the plaintiff's pleadings," and must "leave no doubt that the plaintiff's action is barred by the asserted defense."  *Blackstone Realty LLC v. F.D.I.C.*, 244 F.3d 193, 197 (1st Cir. 2001).  This rule applies to Rule 12(b)(6) motions based on statutes of limitations and application of the discovery rule, which delays accrual of a cause of action.  *Monsarrat v. Zaiger*, 286 F. Supp. 3d 253, 256 (D. Mass. 2017).  When the complaint "sketch[es] a factual predicate that warrant[s] the application of … a different statute of limitations period," based on other dates included in the complaint, dismissal is not appropriate."  *Id*.  *See also Belkin v. Fox*, No. CIV.A. 15-11582-RGS, 2015 WL 3616094, at *2 (D. Mass. June 9, 2015).  "[A] court can grant a motion to dismiss on limitations grounds  only  when  the

pleader's allegations leave no doubt that an asserted claim is time-barred." *Warren Freedenfeld Assocs., Inc. v. McTigue*, 531 F.3d 38, 44 (1st Cir. 2008) (citation omitted) ("*McTigue*").

"Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment." *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008).[3] If the court chooses to ignore supplementary materials submitted with the motion papers and determine the motion under the Rule 12(b)(6) standard, no conversion occurs. *Id.* The decision to convert is within the Court's discretion and is not warranted when there "is an issue of fact that requires conducting discovery." *Rivera v. Marriott Int'l, Inc.,* No. CV 19-1894 (GAG), 2020 WL 1933968, at *5 (D.P.R. Apr. 22, 2020).

### B.    Nuance's Copyright Infringement Cause of Action States a Valid Claim

#### 1.    Nuance's Copyright Claim is Not Time-Barred

Omilia makes one argument for dismissing Nuance's main copyright infringement claim: that it is barred by the statute of limitations.  In particular, Omilia argues that its unauthorized downloading of hundreds of files of Nuance Software, as alleged in the FAC, occurred in 2014 and early 2015, which was more than three years ago.  Mot. at 3-8.  *See* FAC ¶¶ 39-40.

But Omilia ignores, and fails to credit as true as it must for purposes of a motion to dismiss, the allegations in the FAC that support application of the discovery rule. *See* FAC ¶¶ 34-37, 194, 197, 198.  *See also* ¶¶ 212, 221, 227, 229-231, 238, 240-242 (additional allegations relating to discovery rule for the other causes of action). Under those allegations, Nuance's claim did not accrue, and the statute of limitations did not start running, until March 2020.  Nuance has alleged facts sufficient to support application of the discovery rule for each claim.

---

[3] Omilia does not address Rule 56(a)'s more stringent standard: that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Nor does Omilia address the potential prematurity of such a motion under Rule 56(d).

A claim for copyright infringement accrues only when a plaintiff knows or has sufficient reason to know of the ***conduct*** upon which the claim is grounded." *Monsarrat*, 286 F. Supp. 3d at 257 (citing *McTigue,* 531 F.3d at 44) (emphasis in original).  The discovery rule thus applies to claims for copyright infringement.  "In the absence of actual knowledge—and there is no allegation of such knowledge in the complaint—the question becomes when a reasonably prudent person in the plaintiff's shoes would have discovered (that is, would have acquired an awareness of) the putative infringement." *McTigue*, 531 F.3d at 44.[4]

Omilia's sole rejoinder to this is to assert—without citation to any supporting authority— that because the logfiles showing Omilia's illegal downloads lay dormant on a computer system owned by Nuance, Nuance is chargeable with not just inquiry notice, but actual knowledge, of Omilia's wrongdoing from the date it happened.  Mot. at 4.  But even when evidence of wrongdoing existed on computer records within a plaintiff's possession, this is not necessarily sufficient to charge the plaintiff with knowledge of wrongdoing, especially in the absence of a triggering event that would lead a reasonable plaintiff to begin investigating.  In *VB Conversions, LLC v. Exida LLC*, data was stored on plaintiff's servers, but it was not possible to detect the defendant's infringement from that data until the plaintiff installed sophisticated data mining technology.  No. CV13-8306-PSG-JEMX, 2014 WL 12561086, at *2 (C.D. Cal. July 17, 2014).  Thus, there was no triggering event until the data mining software was installed.  This case establishes two important points: 1) actual knowledge is not imputed to a corporation simply because data exists on its servers, and 2) the court will accept the allegations as true as to a lack of knowledge, even when information can be obtained from servers.  *Id.  See also McTigue,* 531 F.3d at 46 (rejecting as "unfounded" argument that public records and public opening of hospital

---

[4] Omilia cites *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 & n.4 (2014) as suggesting in dicta that the discovery rule may not apply in copyright cases.  *Petrella* says nothing of the sort.  Instead, the Supreme Court did "not pass[]" on the question, and noted that nine Courts of Appeals and "the overwhelming majority of courts" use the discovery rule. *Id.*

were sufficient to trigger inquiry notice of infringement of copyrighted blueprints).[5]   Here, Nuance had no reason to look at the logfiles, so there was no triggering event under the discovery rule, and Nuance cannot be charged with knowledge merely because the data existed.

Nuance lacked actual knowledge, and did not detect or discover Omilia's impermissible downloads until after March 2020.  *See* FAC ¶¶ 34-37, 194, 197, 198.  *See also* ¶¶ 212, 221, 227, 229-231, 238, 240-242. These allegations must be taken as true.  *Ruiz*, 496 F.3d at 5.  Omilia essentially asks the Court to adopt a rigid, bright line rule that *as soon as* evidence of possible infringing conduct is recorded in a logfile on a company's servers, knowledge is imputed to the company.  *See* Mot. at 4.  Such a rigid rule at the motion to dismiss stage is contrary to established precedent, and fails to accept the FAC's allegations. *See McTigue,* 531 F.3d at 46.

Nor did Nuance have inquiry notice.  The First Circuit has held that "inquiry notice must be triggered by some event or series of events that comes to the attention of the aggrieved party." *McTigue,* 531 F.3d at 45.[6]  Because the determination of "when a reasonable person would have become aware of a copyright infringement is a fact-sensitive enterprise," at the motion to dismiss stage there must be "facts that justif[y] a *compelled* finding that [the plaintiff] was on inquiry notice," and "some facts that hint[] at the possibility of inquiry notice" will not suffice.  *Id.* at 44,

---

[5] To the extent Omilia's argues Nuance's suspicions of one kind of misconduct by Omilia put Nuance on inquiry notice as to any and all misconduct by Omilia, that is not the standard.  The discovery rule is focused on the specific wrongful conduct.  *Monsarrat v. Zaiger*, 303 F. Supp. 3d 164, 166 (D. Mass. 2018).

[6] Omilia relies on *Satterwhite v. Image Bank, Inc*., 01-cv-7097, 2002 U.S. Dist. LEXIS 17584, at *5-6 (S.D.N.Y. Sep. 16, 2002), but this case does not support Omilia's argument.  There, the defendant *misrepresented* to plaintiff that the payments he received under the parties' agreement were 50% of the revenues, but were in fact 30%.  Because plaintiff simply chose not to do the math, when he could have, the discovery rule did not apply. Conversely, Omilia not only failed to tell Nuance of its illegal downloads; it intentionally allowed Nuance to believe Omilia's only malfeasance was its duplication of license keys of the languages and ASRs Nuance knew Omilia already had. Omilia's conduct was an *omission of fact* that Nuance had yet to discover—the quintessential scenario for applying the discovery rule to a fraud claim.  *See, e.g., Seals v. Compendia Media Grp*., 290 F. Supp. 2d 947, 951 (N.D. Ill. 2003) (failure to properly account or report sales of royalties to plaintiff more than adequate to establish defendants' concealment preventing plaintiff from learning of infringing conduct).

47.  Nuance did not have inquiry notice regarding the Copyright claims until at least March-April 2020, when Omilia filed the Canadian Complaint and served supplemental interrogatory responses.  *See* FAC ¶¶ 34-37, 194, 197, 198.  *See also* ¶¶ 212, 221, 227, 229-231, 238, 240-242. Nuance's generalized suspicion of Omilia's "wrongdoing" (FAC ¶¶ 30, 33) is not sufficient. Mot. at 3.  "There is no presumption that failed business relationships inevitably will give rise either to tortious conduct or disregard of proprietary rights."  *McTigue,* 531 F.3d at 45.  Frayed relationships, even those governing IP rights, do not give rise "to a reasonable suspicion that skulduggery was afoot." *Id.* at 46.  "The discovery rule for copyright infringement cases in the First Circuit is expressly tied to discovery of the 'conduct' in question."  *See Monsarrat*, 303 F. Supp. 3d at 166.  Accordingly, any statute of limitations on the Copyright Act claim did not accrue until at least March-April 2020, and are thus timely asserted.  *See McTigue* at 44.

### 2.     Nuance's Additional Copyright Claims Are Sufficient

Omilia also challenges the sufficiency of Nuance's follow-on allegations of further direct and indirect infringement in Count IX.  Mot. at 5-7 (citing FAC ¶¶ 195, 199).  But here, where Nuance provides detailed allegations about the initial copying (FAC ¶¶ 39-42), as well as the circumstances of Omilia's believed use of the copied material (FAC ¶¶ 31-37), the FAC is more than sufficient to place Omilia on notice of Nuance's claims and satisfy Rule 8(a).

### 3.     The Court Should Disregard Omilia's Additional Materials

Omilia alternatively seeks to convert its motion into a motion for summary judgment, based on materials outside of the FAC that it has submitted. But other than a cursory nod to Rule 12(d), Omilia completely fails to address the applicable standard under Rule 56(a).  The Court should therefore exercise its discretion to decline to convert Omilia's motion.  *See Rivera,* 2020 WL 1933968, at *5.  Nor has Omilia addressed Nuance's entitlement to discovery on Omilia's affirmative defense under the statute of limitations.  The determination of "when a reasonable person would have become aware of a copyright infringement is a fact-sensitive enterprise." *McTigue*, 531 F.3d at 44.  *See also* Fed. R. Civ. P. 56(d).  When the issue "is an issue of fact that

requires conducting discovery," conversion is not warranted.  *See Rivera*, 2020 WL 1933968, at *5.  Because the issue of accrual is fact intensive, requiring discovery into the parties' relationship, the Court should not convert Omilia's motion to a motion for summary judgment.

Even on a fully developed record, the issue would not be proper for summary judgment. "[W]hether or not a plaintiff should have known about the infringement is a fact sensitive question that … should be decided by the fact finder, and not via summary judgment." *Torres-Negron v. Rivera*, No. CIV. 02-1728 (HL), 2005 WL 1308675, at *6 (D.P.R. May 18, 2005), *on reconsideration in part*, 413 F. Supp. 2d 84 (D.P.R. 2006).  *See also Armstrong v. Virgin Records, Ltd*., 91 F. Supp. 2d 628, 640 (S.D.N.Y. 2000).  Omilia's purported evidence concerns the parties' frayed relationship relating to Omilia's improper use of licenses under the 2011 Partnership Agreement.  This is categorically different from Omilia improperly downloading Nuance's products post-termination.  It would be a leap of logic to conclude that the ***only*** inference from these facts is that Nuance ***should have known*** that Omilia later illegally accessed Nuance's servers and downloaded its software—including language packs for languages Omilia had never offered.  Omilia's breach of contract does not, as a matter of law, "serve as a harbinger of an intention to violate [Nuance's] copyright protection."  *McTigue*, 531 F.3d at 44.  Given these competing factual inferences, and taking all inferences in favor of Nuance, this fact-sensitive enterprise cannot be decided on summary judgment with an undeveloped record.[7]

## C.    Nuance's DMCA Cause of Action States a Valid Claim

Following its argument on the copyright infringement claim, Omilia argues that Nuance's Digital Millennium Copyright Act ("DMCA") claim is also time-barred, but cites no authority. The discovery rule equally applies to Nuance's DMCA claims.  *DynaStudy, Inc. v. Houston Indep. Sch. Dist.*, 325 F. Supp. 3d 767, 775 (S.D. Tex. 2017).  Further, because the First Circuit

---

[7] Even the scant external materials Omilia submits invite further questions about those communications and Omilia's lack of follow-up that make clear that summary judgment is not appropriate here.

has applied the discovery rule to claims for copyright infringement, and DMCA is governed by the same limitations statute, it follows the discovery rule must also apply to the DMCA.  *See McTigue,* 531 F.3d at 44; 17 U.S.C. § 507(b).  *See* FAC ¶¶ 34-37, 194, 197, 198, 212.  *See also* ¶¶ 221, 227, 229-231, 238, 240-242.  Nuance's DMCA claim is therefore not time-barred.

Omilia also argues that Count X of the FAC, which asserts that Omilia violated § 1201(a) of the DMCA, should be dismissed for failure to state a claim.  Omilia's argument fails. Congress passed the DMCA to support "the efforts of copyright owners to protect their works from piracy behind digital walls such as encryption codes *or password protections*."  *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 435 (2d Cir. 2001) (emphasis added).  In particular, § 1201(a) provides that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title."  17 U.S.C. § 1201(a)(1)(A).  Here, Omilia does not dispute that Nuance has properly alleged that Nuance protected its copyrighted works from being accessed through the internet with a password system, that these password protections are "technological measures" for the purposes of § 1201, or that Omilia evaded these protections by using a password unlawfully.  Instead, Omilia contends that even though password protections have long been recognized as the type of protections bolstered by the DMCA, the unlawful use of passwords is not "circumvention" for the purposes of the DMCA. Mot. at 12-14. Omilia's argument is wrong for at least three reasons.

First, Omilia's argument conflicts with the plain language of the statute.  The DMCA defines to "circumvent" as meaning "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner."  *Id*. § 1201(a)(3).  Importantly, technological systems that protect works but allow access with passwords involve two distinct parts:  (1) a digital "wall" that generally prohibits access, and (2) a means of not encountering that "wall" upon correct entry of a password.[8]  As a result, when a user enters a password, the access

_____

[8] To the extent that Omilia disputes this characterization of Nuance's password system, that

protections are "avoid[ed], bypass[ed], … [or] deactivate[d]," which are all forms of circumvention included in the DMCA's definition.  Omilia nevertheless asserts that password misuse is not "circumvention" because it does "not impair[] a technological measure" and because the DMCA does not prohibit "'use of a technological measure without the authority of the copyright owner.'"  Mot. at 13 (quoting *Egilman v. Keller & Heckamn, LLP*, 401 F. Supp. 2d 105, 113 (D.D.C. 2005)).  However, the statutory definition of circumvention includes both "to impair" and "to avoid, bypass, … [or] deactivate."  That password misuse is not an "impairment" does not demonstrate that a password does not otherwise circumvent a technological measure.  Likewise, in arguing that password misuse is "use" of a technological measure, not circumvention, Omilia conflates the defeat of a technological measure prohibiting access to a copyrighted work with the use of password features.  In other words, the password that Omilia "used" was not the technological measure; but the means by which Omilia "avoid[ed], bypass[ed], … [or] deactivate[d]" Nuance's technological measures, without authorization.

The distinction between a technological measure and the means for defeating that measure was recognized in the seminal DMCA case *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 317 (S.D.N.Y. 2000).  The technological measures in that case were an encryption system for DVDs.  *Id.* at 303.  DVD players decrypt the DVDs using "a series of keys stored on the DVD and the DVD player."  *Id.* at 310.  After a Norwegian programmer "reverse engineered a licensed DVD player and discovered the … keys," the defendants began distributing software that used these keys to decrypt DVDs but without the authorization of the copyright owners.  *Id.* at 311-312.  The Southern District of New York subsequently found that the decryption software "clearly is a means of circumventing a technological access control measure."  *Id.* at 317.  The Second Circuit subsequently affirmed.  *Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001).  Under Omilia's argument, however, the defendants in *Reimerdes* should have prevailed because the use of the keys found in licensed DVD players was

_____

factual disagreement is not amenable to resolution through a motion to dismiss.

simply "use of a technological measure without the authority of the copyright owner." The Court should reject Omilia's invitation to depart from *Reimerdes*.

Second, Omilia incorrectly suggests that this Court has already decided this issue in *Real View, LLC v. 20-20 Techs., Inc*., 789 F. Supp. 2d 268, 272 (D. Mass. 2011). Mot. at 13. However, *Real View* did not even involve a claim under the DMCA. Rather, the plaintiff alleged a violation of Chapter 93A, a Massachusetts unfair competition law. *Id*. at 272. On the basis of evidence adduced during trial, the Court found no violation of Chapter 93A. In doing so, the Court described the DMCA as a "statutory analogue[]" to Chapter 93A and posited only that the misuse of a password would "not necessarily" violate the DMCA, clearly leaving open the possibility that the misuse of a password could violate § 1201(a). In fact, whether the unlawful use of a password constitutes "circumvention" for the purposes of the DMCA is an issue of first impression in the District of Massachusetts and the First Circuit. *See CoxCom, Inc. v. Chaffee*, 536 F.3d 101, 110 (1st Cir. 2008) (recognizing "a dearth of case law" regarding the DMCA).

Finally, Omilia fails to recognize that numerous district courts have found that the unauthorized use of passwords is a violation of § 1201(a). *See, e.g.*, *Synopsys, Inc. v. InnoGrit Corp.*, No. 19-CV-02082-LHK, 2019 WL 4848387, at *8 (N.D. Cal. Oct. 1, 2019) ("[U]nauthorized use of a license key constitutes circumvention under Section 1201(a)(1) of the DMCA."); *DISH Network LLC v. Barnaby*, No. 3:15-CV-492-TAV-HBG, 2016 WL 6603202, at *3 (E.D. Tenn. Nov. 8, 2016) ("[C]ourts have held that the DCMA applies to various piracy instruments including passcodes."); *DISH Network LLC v. DiMarco*, No. 2:11-CV-01962, 2012 WL 917812, at *5 (D. Nev. Mar. 14, 2012) (applying the DMCA to the distribution of passwords); *Microsoft Corp. v. EEE Bus. Inc.*, 555 F. Supp. 2d 1051, 1059 (N.D. Cal. 2008) ("[D]istributing a[n access code] without authorization … circumvented [a] technological measure to control access to a copyrighted work in violation of the DMCA."); *321 Studios v. Metro Goldwyn Mayer Studios, Inc*., 307 F. Supp. 2d 1085, 1098 (N.D. Cal. 2004) (use of an "authorized key" without the "authority to use this key" supported a DMCA violation). In fact, one district court has squarely rejected the reasoning of the two cases on which Omilia most

heavily relies, concluding that "[u]nauthorized use of a password may constitute circumvention under the DMCA." *Actuate Corp. v. Int'l Bus. Machs. Corp.*, No. C-09-05892 JCS, 2010 WL 1340519, at *5-*9 (N.D. Cal. Apr. 5, 2010) (rejecting *I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521 (S.D.N.Y. 2004) and *Egilman*, 401 F. Supp. 2d at 113–114).[9]  Accordingly, password misuse supports a DMCA claim.

### D.    Nuance's CFAA Cause of Action States a Valid Claim

As it does with the other claims, Omilia argues that Nuance's Computer Fraud and Abuse Act ("CFAA") claim is time-barred, relying on the same imputed-knowledge theory.  Mot. at 9. The statute of limitations under the CFAA is two years.  "A civil claim under the CFAA must be brought within two years after the owner discovers the unauthorized access." *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 774 (S.D. Tex. 2010) (citing 18 U.S.C. § 1030(g)).[10]  Illustratively, in *Sewell v. Bernardin*, 795 F.3d 337, 342 (2d Cir. 2015), Sewell brought CFAA claims based on the hacking of several of her online accounts.  The Second Circuit specifically rejected the district court's generalized conclusion that the plaintiff was on notice that her entire computer was compromised as of the date of her discovery of the first account, stating, "it does not follow from the fact that the plaintiff discovered that one such account—AOL e-mail—had been compromised that she thereby had a reasonable opportunity to discover, or should be expected to have discovered, that another of her accounts—Facebook— might similarly have become compromised."  Nuance has alleged that it was not aware the damage alleged in the FAC until after March 2020, when it actually discovered Omilia's

---

[9] Omilia incorrectly cites certain cases as "hav[ing] found" in its favor when they merely contain related dicta.  For instance, in *TLS Grp., S.A. v. NuCloud Global, Inc.*, the District of Utah noted in a footnote that courts have found that the use of a password is not "circumvention," but that court nonetheless found that the conduct alleged in that case "could support a conclusion that [the defendant] violated § 1201(a)(1)."  No. 2:15-CV-00533-TC, 2016 WL 1562910, at *9 n.6 & *10 (D. Utah Apr. 18, 2016).  *See also Real View*, 789 F. Supp. 2d at 272 (discussed *supra*).

[10] In subsequent proceedings, the court denied the defendant's motion for summary judgment on the basis of the statute of limitations.  *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, No. 4:09-cv-4039, 2015 WL 1651251, *3 (S.D. Tex. Apr. 14, 2015).

wrongdoing.  *See* FAC ¶¶ 34-37, 194, 197, 198, 212, 221.  *See also* ¶¶ 227, 229-231, 238, 240-242.  This allegation must be taken as true for the purpose of Rule 12(b)(6).  *Ruiz*, 496 F.3d at 5.  Therefore, Omilia's limitations argument must be rejected as to Nuance's CFAA claim as well.[11]

Omilia also seeks to dismiss Nuance's CFAA claim on the basis that the conduct alleged in the FAC was neither "without authorization" nor "exceed[ed] authorized access."  This argument, too, must be rejected.  The FAC alleges that Omilia's CEO, Dimitris Vassos (or someone using his credentials), logged into Nuance servers in Massachusetts on numerous occasions after the termination of the parties' 2011 Partner Agreement, and downloaded hundreds of files of Nuance software—including software for languages that had never been within the scope of the Partner Agreement.  FAC ¶¶ 215-223.

In support of its theory, Omilia parses the language of the CFAA, which prohibits access "without authorization" or "in excess of authorization," to argue that there is nothing actionable about using credentials associated with a terminated contract to log in and clean out the store after the agreement ends.  *See* Mot. at 14-16.  This is untrue; using expired credentials to gain access to a computer system is well-established to be a CFAA violation.

Omilia argues that the "without authorization" prong means that the user "had no permission to access the computer system at all," and that because Omilia was using a previously-issued (but expired) password, this portion of the statute is inapplicable.  Omilia's analysis is incorrect.  Even under the "narrow" interpretation of the CFAA advanced by Omilia, many courts have held that accessing a former employer's computer systems after termination is prohibited conduct under the CFAA.  In other words, at the time of access, there was ***no authorization*** because any prior authorization had expired or was revoked.  Omilia's conduct—logging into Nuance servers and downloading its software after termination of the 2011 Partner Agreement—is precisely analogous to these former-employee cases.  For example, in *MOCA*

---

[11] Because of the differences in the facts as plead, Omilia's reliance on *Tactical Pers. Leasing, Inc. v. Hajduk*, No. CV 18-203, 2018 WL 4740195, at *4 (W.D. Pa. Oct. 2, 2018) is misplaced.

*Sys., Inc. v. Bernier*, No. CIV.A. 13-10738-LTS, 2013 WL 6017295 (D. Mass. Nov. 12, 2013), the court considered the applicability of both the "narrow" and "broad" interpretations of the CFAA to a former-employee-access case, holding the facts were actionable under either interpretation.  The court denied a motion to dismiss, holding, "The Complaint's allegations support the reasonable inference that upon termination, MOCA ***stripped Bernier of all of his authorization*** to access its computers.  Thus, the subsequent alleged access was 'without authorization' under both the narrow and broad constructions of the statute, thereby stating a claim under the CFAA." *Id.,* at *3 (emphasis added). *See also Tech Sys., Inc. v. Pyles*, 630 F. App'x 184, 186 (4th Cir. 2015) (applying the CFAA narrowly, but finding sufficient evidence to support a jury verdict where a former employee "accessed her corporate email account and company-issued Blackberry without authorization" following termination); *United States v. Steele*, 595 F. App'x 208, 211 (4th Cir. 2014) (end of a defendant's employment "logically suggests that the authorization he enjoyed during his employment no longer existed" even if password was not changed); *United States v. Shahulhameed*, 629 F. App'x 685, 688 (6th Cir. 2015) ("Toyota's failure to disable his account does not mean that his access was authorized").

Omilia also cites *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009), which actually supports Nuance's position.  Plaintiff LVRC maintained an account through a third party to provide email, website, and related services as well as to monitor internet traffic to its website and compile statistics about that traffic. 581 F.3d at 1129.  The Defendant, Brekka, worked for LVRC and, as part of his duties, obtained a log-in to access the website and statistics.  Nearly a year after Brekka left LVRC, his credentials were used to log in to its website and access the third-party statistics. *Id.* at 1130.  The Ninth Circuit held that this constituted "access[ing] a protected computer 'without authorization' for purposes of the CFAA." *Id.* at 1136. *See also Estes Forwarding Worldwide LLC v. Cuellar*, 239 F. Supp. 3d 918, 925–26 (E.D. Va. 2017).  In sum, using login credentials after the termination of authorization to use them supports a claim under the CFAA, whether viewed as "without authorization" (because the authorization has expired and no longer exists) or "exceeding authorization" (because the time

limit on the authorization has expired). *See also EF Cultural Travel BV v. Zefer Corp.*, 318 F.3d 58, 62 (1st Cir. 2003) (quoting 18 U.S.C. §§ 1030(a)(4), -(e)(6)) (CFAA violation arises when a defendant "exceeds authorized access" by accessing "a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter.").

### E.      Nuance's State Law Claims Are Timely and Not Preempted

#### 1.      Both State Law Claims Are Subject to the Discovery Rule

Omilia makes the same flawed time-bar argument with respect to Nuance's state law claims.  Mot. at 9-10.  Massachusetts courts similarly apply the discovery rule.  *See Taygeta Corp. v. Varian Assocs., Inc.*, 436 Mass. 217, 229 (2002).  Actions in both contract and tort may be tolled until such time as the plaintiff discovers or should have reasonably discovered the facts giving rise to the cause of action.  *Moore v. Valle Auto Mall, Inc.*, 92 Mass. App. Ct. 1117, 2017 WL 6002817, *1 (Mass. App. Dec. 5, 2017) (discovery rule applies to common law conversion claim); *Cambridge Plating Co. v. Napco, Inc.*, 991 F.2d 21, 25 (1st Cir. 1993); *Bowen v. Eli Lilly & Co.*, 408 Mass. 204, 205-06 (1990).  *See also Grace v. Apple, Inc.*, 328 F.R.D. 320, 345 (N.D. Cal. 2018) (suggesting that computer-related trespass to chattels claim generally subject to discovery rule).  Once again, Nuance was not on "inquiry notice" until on or about March 2020 when Omilia made, for the first time, disclosures sufficient for Nuance to become aware that Omilia had engaged in tortious conduct leading to causes of action for conversion and trespass to chattels.[12]  Thus, for the same reasons set forth above, Omilia's motion to dismiss the state law

---

[12] Omilia also argues that Nuance's claims concern "intangible property" and are not subject to conversion or trespass of chattels.  However, both tor are well recognized as applicable to intrusions into computer networks and downloading of software.  *See infra*; *see also M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 792 (S.D. Tex. 2010).  Omilia's cases do not suggest otherwise. *Blake v. Prof'l Coin Grading Serv.*, 898 F. Supp. 2d 365, 386 (D. Mass. 2012) (royalty rights, goodwill, literary rights, copyrights, trademarks, and patents are considered intangible property); *Tomaselli v. Beaulieu*, 967 F. Supp. 2d 423, 453 (D. Mass. 2013), aff'd (Dec. 16, 2014) ("no allegations that the [defendants] wrongfully obtained possession of any personal property belonging to the [plaintiff]").

claims as time-barred must fail. *See* FAC ¶¶ 227-231, 238-242.

### 2.   Nuance's Trespass to Chattels Claim is Not Preempted

Omilia further seeks dismissal of Nuance's trespass to chattels claim on the basis that it is preempted by the Copyright Act. However, courts have found a claim for trespass to chattels to be different in kind from a copyright infringement claim, and therefore not preempted. *See eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058 (N.D. Cal. 2000). As set forth in *eBay*, the elements of a claim for trespass to chattels are: (1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage to plaintiff. *Id*. at 1069-70. The court held that the crawling of eBay's Web site by Bidder's Edge was unauthorized because "eBay's servers are private property, conditional access to which eBay grants the public." *Id*. at 1070. Further, the crawling constituted unauthorized interference with eBay's possession of its personal property. *See also Oyster Software, Inc. v. Forms Processing, Inc.*, No. C-00-0724-JCS, 2001 WL 1736382, at *12 (N.D. Cal. Dec. 6, 2001). Similarly, here, Omilia's accessing of Nuance's servers in Massachusetts to download the Software constitute unauthorized interference with Nuance's use of those servers.[13]

### 3.   Nuance's Conversion Claim is Not Preempted

Omilia also seeks dismissal of Nuance's conversion claim as preempted. However, at least one recent case has found conversion not to be preempted where it involves the extra elements of unauthorized access or improper acquisition. *See Glass Egg Digital Media v. Gameloft, Inc.*, No. 17-CV-04165-MMC, 2018 WL 3659259, at *6 (N.D. Cal. Aug. 2, 2018). The court in *Glass Egg* found that, for example, alleging "unauthorized access" to, or "improper

---

[13] The only authority Omilia cites as having made a similar preemption finding is *Cassetica Software, Inc. v. Computer Scis. Corp.*, 09-cv-0003, 2009 WL 1703015, *5 (N.D. Ill. Jun. 18, 2009). But *Cassetica* does not provide adequate support for this conclusion. In two short paragraphs, and without substantial analysis, the court in that case held that the plaintiff's claims for conversion, trespass to chattels and unjust enrichment were all preempted. *Id.*

acquisition of" the work at issue is an extra element precluding preemption. *Id.* Here, Nuance has alleged that Omilia improperly acquired the works via unauthorized access. Further, courts have declined to find preemption to the extent a conversion claim relates to non-copyrightable material. *See Dunlap v. G & L Holding Grp., Inc.,* 381 F.3d 1285, 1295 (11th Cir.2004); *M-I LLC*, 733 F. Supp. 2d at 792; *U.S. Marine Surveyors, Inc. v. Reiner*, No. CV 16-5360 PA (FFMX), 2016 WL 9138056, at *4 (C.D. Cal. Aug. 25, 2016). To the extent any of the data files in the language packs that Omilia improperly downloaded are deemed to contain non-copyrightable material, Nuance's conversion claim is further not preempted.

F.    **Nuance's Prayer for Statutory Damages and Attorneys' Fees is Proper**

Omilia seeks to dismiss or strike from the FAC's prayer for relief requests for statutory damages and attorneys' fees under the Copyright Act. Omilia correctly points out that these particular remedies are not available for infringements that occurred prior to Nuance's registration of the copyrights in 2020, and Nuance does not seek these remedies for pre-registration infringement. Rather, to avoid a later potential waiver argument, Nuance has included both remedies in its prayer for relief to preserve its rights to seek these remedies in the event that the facts at trial show that either there was a break in Omilia's infringement for an appreciable period of time, or that there is a legally significant difference between Omilia's pre- and post-registration infringements. *See, e.g., Grant Heilman Photography, Inc. v. McGraw-Hill Glob. Educ. Holdings, LLC*, No. CV 17-694, 2018 WL 3193706, at *4 (E.D. Pa. June 28, 2018); *Rosen v. Netfronts, Inc.*, No. CV 12-658 CAS FFMX, 2013 WL 3467205, at *3 (C.D. Cal. July 9, 2013) (statutory damages permitted after period of cessation of infringement); *Segura v. Sofa Entm't, Inc.*, No. 3:16-cv-0938-AC, 2017 WL 2532211, at *4 (D. Or. June 9, 2017) (discussing standard for legally significant difference).

G.    **In the Alternative, the Court Should Grant Leave to Amend**

Omilia makes two cursory requests—in the Introduction and Conclusion—that "Counts IX through XIII of the amended complaint should be dismissed, with prejudice." But Omilia

offers no basis or explanation for why such dismissal should be with prejudice.  Mot. at 1, 20.
Omilia's motion should be denied in its entirety.  However, to the extent the Court grants part or
all of Omilia's motion to dismiss, Nuance requests leave to amend.  Under Rule 15, "[t]he court
should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15.  The FAC's
allegations should be credited as true, and all reasonable inferences drawn in Nuance's favor.
Nuance has offered detailed factual allegations to support the discovery rule.  *See* FAC ¶¶ 34-37,
194, 197, 198, 212, 221, 227, 229-231, 238, 240-242.  If the Court requires more detail, Nuance
should be permitted to supply additional, more detailed facts to support the discovery rule and to
distinguish its prior licensing-related dispute with Omilia from the recent discovery of Omilia's
wholesale downloading of Nuance's software after termination of the 2011 Partner Agreement.

## IV.    CONCLUSION

Omilia's motion to dismiss should be denied.  Alternatively, any dismissal should be
without prejudice and with leave to amend.

**REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7.1(d), Nuance believes that oral argument may assist the Court
and requests oral argument of this motion.

Date:  July 13, 2020                              Respectfully submitted,


                                                  */s/ Christian E. Mammen*
                                                  **WOMBLE BOND DICKINSON (US) LLP**

                                                  David Greenbaum (*admitted pro hac vice*)
                                                  **Nuance Communications, Inc.**
                                                  1111 Macarthur Boulevard
                                                  Mahwah, NJ 07430
                                                  (857) 214-5524
                                                  david.greenbaum@nuance.com

Jennifer Itzkoff (MA BBO No. 675694)
**WOMBLE BOND DICKINSON (US) LLP**
Independence Wharf
470 Atlantic Avenue, Suite 600
Boston, MA 02110
Telephone: (857) 287-3142
Jennifer.Itzkoff@wbd-us.com

Christian E. Mammen (*admitted pro hac vice*)
Carrie Richey (*admitted pro hac vice*)
**WOMBLE BOND DICKINSON (US) LLP**
1841 Page Mill Road, Suite 200
Palo Alto, CA 94304
Telephone: (408) 341-3067
Chris.Mammen@wbd-us.com
Telephone: (408) 341-3060
Carrie.Richey@wbd-us.com

Christine H. Dupriest (*admitted pro hac vice*)
**WOMBLE BOND DICKINSON (US) LLP**
271 17th Street, Suite 2400
Atlanta, Georgia 30363
Telephone: (404) 962-7538
Christine.Dupriest@wbd-us.com

Kristin Lamb (*admitted pro hac vice*)
**WOMBLE BOND DICKINSON (US) LLP**
811 Main Street, Suite 3130
Houston, TX 77002
Telephone: (346) 998-7843
Kristin.Lamb@wbd-us.com

*Attorneys for Plaintiff Nuance Communications, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document will be filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 13, 2020.

<u>/s/ *Christian E. Mammen*</u>
Christian E. Mammen