**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NUANCE COMMUNICATIONS, INC.,<br><br>    Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>OMILIA NATURAL LANGUAGE SOLUTIONS, LTD.,<br><br>    Defendant and Counterclaim Plaintiff | Case No. 1:19-CV-11438-PBS<br><br>JURY TRIAL DEMANDED<br><br>**Leave to File Granted on July 31, 2020** |

**OMILIA NATURAL LANGUAGE SOLUTIONS, LTD.'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS COUNTS IX-XIII OF THE FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ..................................................................................................................................... 1

I. NUANCE FAILS TO SHOW IT LACKED KNOWLEDGE OF THE AMENDED CLAIMS ............................................................................................................. 1

    A. Nuance Pleaded Facts Showing It Knew of the Amended Claims .......................... 1

    B. Nuance Pleaded Specific Knowledge of Its Claims ................................................ 2

    C. Nuance Did Not Plead Facts Showing Its Purported Lack of Knowledge Was Reasonable ........................................................................................................ 2

II. NUANCE HAS NOT RAISED A DISPUTED ISSUE OF MATERIAL FACT PRECLUDING SUMMARY JUDGMENT ...................................................................... 4

III. NUANCE FAILS TO STATE A CIRCUMVENTION CLAIM ........................................ 5

IV. NUANCE FAILS TO STATE A COMPUTER FRAUD AND ABUSE ACT CLAIM .... 6

V. THE COPYRIGHT ACT PREEMPTS NUANCE'S STATE LAW CLAIMS .................. 6

VI. NUANCE HAS NO BASIS TO SEEK STATUTORY DAMAGES OR ATTORNEY'S FEES ........................................................................................................ 8

VII. NUANCE SHOULD NOT BE GRANTED LEAVE TO AMEND ................................. 9

CONCLUSION ................................................................................................................................. 9

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*Allen v. Beverly Hills*,
 911 F.2d 367 (9th Cir. 1990) ...................................................................................................9

*Children's Hosp., Corp. v. Cakir*,
 15-cv-13281, 2017 U.S. Dist. LEXIS 147123 (D. Mass. Sept. 12, 2017) .................................7

*eBay Inc. v. Bidder's Edge, Inc.*,
 100 F. Supp. 2d 1058 (N.D. Cal. 2000) ...................................................................................7

*Egilman v. Keller & Heckman, LLP.*,
 401 F. Supp. 2d 105 (D.D.C. 2005) .........................................................................................5

*Epstein v. C.R. Bard, Inc.*,
 460 F.3d 183 (1st Cir. 2006) ....................................................................................................9

*Evox Prods. LLC v. Chrome Data Solutions*,
 3:16-cv-0057-PK, 2018 U.S. Dist. LEXIS 197882 (D. Or. Sep. 6, 2018) ................................2

*Ez-Tixz v. Hit-Tix, Inc.*,
 919 F. Supp. 728 (S.D.N.Y. 1996) ...........................................................................................8

*Facebook, Inc. v. Power Ventures, Inc.*,
 844 F.3d 1058 (9th Cir. 2015) ..................................................................................................6

*Glass Egg Digital Media v. Gameloft, Inc.*,
 17-cv-04165-MMC, 2018 U.S. Dist. LEXIS 130219 (N.D. Cal. Aug. 2, 2018) ......................7

*Johnson v. Jones*,
 149 F.3d 494 (6th Cir. 1997) ....................................................................................................8

*Monsarrat v. Zaiger*,
 303 F. Supp. 3d 164 (D. Mass 2018) .......................................................................................2

*Persson v. Boston Univ.*,
 15-14037-JGD, 2019 U.S. Dist. LEXIS 29111 (D. Mass Feb. 25, 2019) ................................4

*T.H. Glennon Co. v. Monday*,
 18-cv-30120-WGY, 2020 U.S. Dist. LEXIS 45917 (D. Mass. Mar. 17, 2020) .......................6

*Universal City Studios v. Reimerdes*,
 111 F. Supp. 2d 294 (S.D.N.Y. 2000) ......................................................................................7

*VBConversions, LLC v. Exida LLC*,
 13-cv-8306-PSG-JEMX, 2014 WL 12561086 (C.D. Cal. July 17, 2014) ...............................5

*Warren Freedenfeld Assocs. v. McTigue*,
   531 F.3d 38 (1st Cir. 2008) ................................................................................................. 2, 3

*Zamoyski v. Fifty-Six Hope Rd. Music Ltd.*,
   718 F. Supp. 2d 128 (D. Mass. 2010) ...................................................................................... 7

## FEDERAL STATUTES

18 U.S.C. § 1030 ................................................................................................................................ 8

## FEDERAL RULES

Fed. R. Civ. P. 15(a)(2) .................................................................................................................... 10

Rule 56(a) ........................................................................................................................................... 6

# INTRODUCTION

Nuance's opposition does not change the facts pleaded in the amended complaint: for years, Nuance has had in its possession all the information it needed to bring these new claims. The opposition does not rebut that Nuance knew, or reasonably should have known, of the facts underlying the amended claims. Nor has Nuance identified any facts in the amended complaint justifying Nuance's failure to investigate or to act sooner. Nuance even failed to proffer facts to rebut the additional information Omilia provided, which corroborate Nuance's knowledge. For all these reasons, Nuance's amended claims are time-barred.

In addition, the opposition fails to show why Nuance should proceed on its circumvention, CFAA, conversion, and trespass to chattels claims. All of the newly amended claims should be dismissed, with prejudice, and without leave to amend.

# ARGUMENT

## I.  NUANCE FAILS TO SHOW IT LACKED KNOWLEDGE OF THE AMENDED CLAIMS

### A.  Nuance Pleaded Facts Showing It Knew of the Amended Claims

Nuance argues it had a "suspicion" that Omilia was "misusing" its licenses, "including under-reporting of license volumes and misuse of Nuance evaluation licenses" (Op. at 1), but that it remained unaware of Omilia's alleged downloads of Nuance software (Op. at 3) ("Nuance had no information or evidence suggestive of any specific wrongdoing by Omilia other than a hunch."). But the amended complaint pleaded more than a "hunch": in addition to its knowledge of a dispute with Omilia as to the purported under-reporting of licenses that Nuance deemed a "breach" of the 2011 Agreement (Dkt. No. 102 ¶¶ 28-30), Nuance pleaded that "[a]s a result of the abnormally rapid pace of Omilia's product development, Nuance has long suspected that Omilia took advantage of its role as a Nuance reseller and short-cut its ASR development

1

process" (*id.* ¶ 33), and Nuance was in possession of detailed logs showing purported downloads of Nuance software (*see id.* ¶ 40). This knowledge caused Nuance's claims to accrue.

### B.     Nuance Pleaded Specific Knowledge of Its Claims

Nuance argues it lacked knowledge of the specific facts giving rise to its claims. *See* Op. at 3. Citing *Monsarrat*, Nuance argues that it must have possessed knowledge of the "specific wrongful conduct" for its claims to have accrued. Op. at 7 n.5 (citing *Monsarrat v. Zaiger*, 303 F. Supp. 3d 164 (D. Mass 2018)). *Monsarrat* did not discuss the level of specificity required; it stated only that the copyright holder must possess knowledge of "the act which is the basis for the claim," as opposed to knowledge of the specific infringer. *Monsarrat*, 303 F. Supp. 3d at 166. A party need not know exactly how the infringement occurred to be on notice of the infringement. *See Warren Freedenfeld Assocs. v. McTigue*, 531 F.3d 38, 44 (1st Cir. 2008) (requiring only that plaintiff "possess information fairly suggesting some reason to investigate whether he may have suffered an injury at the hands of a putative infringer"); *see also Evox Prods. LLC v. Chrome Data Solutions*, 3:16-cv-0057-PK, 2018 U.S. Dist. LEXIS 197882, at *50-51 (D. Or. Sep. 6, 2018) (concluding that the plaintiff did not exercise reasonable diligence to discover the alleged copyright infringement because plaintiff "could have conducted the same analysis . . . in 2012 that he conducted in 2014"). Regardless, Nuance *had specific knowledge of each claimed act of access, infringement, and circumvention* – detailed download logs showing each of Omilia's purported downloads of the software files. *See* Dkt. No. 102 ¶ 40.

### C.     Nuance Did Not Plead Facts Showing Its Purported Lack of Knowledge Was Reasonable

Nuance suggests that its lack of knowledge of the claims was reasonable. *See* Op. at 6-7. The amended complaint, however, fails to plead any facts showing why Nuance's lack of knowledge was reasonable.

2

Citing *VBConversions*, Nuance argues that "evidence of wrongdoing [] on computer records within plaintiff's possession" is not sufficient to find the plaintiff had knowledge of the wrongdoing. Op. at 6. The case is not on point. In *VBConversions*, the plaintiff developed a software tracking system that sent reports of unlicensed uses by third parties. *VBConversions, LLC v. Exida LLC*, 13-cv-8306-PSG-JEMX, 2014 WL 12561086, at *2 (C.D. Cal. July 17, 2014). The tracking system logged nearly 400,000 entries which were "too numerous" to be viewed manually; plaintiff had to rely on automated scans of the data. *Id.* The copyright owner alleged that it was unable to identify potential infringements by third parties until it created a new, more sophisticated data mining technology. *See id.* The court found that the plaintiff adequately pleaded that it acted with reasonable diligence and that the pre-data mining tracking system did not detect and could not have detected defendant's activities. *See id.* at *4.

Unlike in *VBConversions*, Nuance has not pleaded any facts showing *why* it could not have learned of the unauthorized download from the download log files in its possession. Nor has Nuance pleaded how the information in the logfiles might have been concealed or difficult to learn, especially where Nuance had reason to investigate further – *i.e.*, the existence of a dispute between the parties that led to termination of the 2011 agreement, and a long-held suspicion that Omilia had engaged in improper behavior to quickly develop competing ASR products. *See* Dkt. No. 102 ¶¶ 28-30, 33. Similarly, Nuance's citation to *Warren Freedenfeld Associates* (Op. at 6-7) is unpersuasive as the case concerned whether publicly available records, as opposed to records already within the plaintiff's possession, triggered the inquiry notice. *See Warren Freedenfeld Assocs.*, 531 F.3d at 46.

Nuance claims it "had no reason to look at the logfiles, so there was no triggering event under the discovery rule." Op. at 7. But Nuance has it backwards; the recording of the

3

downloads in the logfiles *is* knowledge of the claims, or at least a triggering event that necessitated further investigation – as were Nuance's knowledge of its license dispute with Omilia (Dkt. No. 102 ¶¶ 28-30) and its long-held suspicion of alleged wrongdoing on the part of Omilia in light of the "abnormally rapid pace of Omilia's product development" (*id.* ¶ 33). Nuance's amended complaint concedes that it has long been on inquiry notice of its claims.

## II. NUANCE HAS NOT RAISED A DISPUTED ISSUE OF MATERIAL FACT PRECLUDING SUMMARY JUDGMENT

In response to Omilia's proffer of facts outside of the record – the November 2015 letter and a declaration from Dimitris Vassos – Nuance argues that Omilia "fail[ed] to address the appropriate standard under Rule 56(a)." Op. at 8. The opposition does not explain how Omilia fails to address the Rule 56(a) standard, or why that matters. Nuance's argument is beside the point.

In its motion, Omilia presented information demonstrating that Nuance was on notice of its claims since at least 2015. *See* Dkt. No. 121 at 10-12. Nuance has proffered no facts refuting these materials. To avoid summary judgment, Nuance must come forward with facts to rebut Omilia's factual assertions. *See Persson v. Boston Univ.*, 15-14037-JGD, 2019 U.S. Dist. LEXIS 29111, at *27 (D. Mass Feb. 25, 2019) ("[w]here, as here, the nonmovant bears the burden of proof on the dispositive issue, it must point to 'competent evidence' and 'specific facts' to stave off summary judgment.") (citing *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011)). Nuance has offered no facts disputing Omilia's evidence, and Nuance does not point to allegations pleaded in the amended complaint to support its conclusion that a dispute exists as to whether Nuance was on notice in 2015. Accordingly, Nuance has not demonstrated that a genuine issue of fact exists, and summary judgment is warranted that Nuance's claims are barred by the applicable statutes of limitations. *See*

4

*Zamoyski v. Fifty-Six Hope Rd. Music Ltd.*, 718 F. Supp. 2d 128 (D. Mass. 2010) (dismissing copyright infringement claim on summary judgment as time barred, and noting that "[t]he non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact").

### III.  NUANCE FAILS TO STATE A CIRCUMVENTION CLAIM

Nuance claims that Omilia's argument as to the circumvention claim "conflicts with the plain language of the statute" (Op. at 10), but the opposite is true:  Nuance's claim has no basis in the Copyright Act.  Nuance characterizes its servers as having a "digital 'wall' that generally prohibits access," and the entry of a password as "not encountering" such a wall.  Op. at 10.  Nuance cites no authority for this characterization, which appears to suggest that *any* use of a password to access a technological system constitutes circumvention for purposes of § 1201, even where the password is intended to facilitate access.  *See* Op. at 10-11 ("when a user enters a password, the access protections are 'avoid[ed], bypass[e], … [or] deactivate[d],' which are all forms of circumvention included in the DMCA's definition").  Nuance's misreading of § 1201 also ignores case law holding that the use of "a username/password combination as intended," as Omilia allegedly used here, does not constitute circumvention.  *Egilman v. Keller & Heckman, LLP.*, 401 F. Supp. 2d 105, 113 (D.D.C. 2005).

Nuance's citation to *Reimerdes* (Op. at 11-12) is unpersuasive.  At issue in *Reimerdes* was § 1201(a)(2), the anti-trafficking provision of the DMCA, not § 1201(a)(1)(A).  *See Universal City Studios v. Reimerdes*, 111 F. Supp. 2d 294, 316 (S.D.N.Y. 2000).  The reverse engineering of DVD players to obtain and distribute license keys in *Reimerdes* is far different from Omilia's use of a username and password provided by *Nuance* to access Nuance's servers.  Nuance's argument that "the Court should reject Omilia's invitation to depart from *Reimerdes*" is a straw man, as Omilia has neither cited nor relied on that case.  *See* Op. at 12.

## IV.  NUANCE FAILS TO STATE A COMPUTER FRAUD AND ABUSE ACT CLAIM

To avoid dismissal of its CFAA claim, Nuance cites cases generally holding that employees using login credentials after the termination of their employment were acting "without authorization." Op. at 14-15.  The former relationship between Nuance and Omilia, comprising various contracts and licenses, was not an employer-employee relationship.  *See* Dkt No. 102 ¶¶ 17-25.  Nuance pleaded no facts to support its claim that at the time of Omilia's access, Omilia had "no authorization because any prior authorization had expired or was revoked," only that the 2011 Partnership Agreement had terminated.  Op. at 14; *see* Dkt. No. 102 ¶¶ 2, 215-23; *see also Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2015) ("a defendant can run afoul of the CFAA when he or she has no permission to access a computer or when such permission has been *revoked explicitly*.") (emphasis added).

The most Nuance can argue is that Omilia's alleged conduct was a "violation[] of a contract or term of service," which only violates 18 U.S.C. § 1030 under the broad interpretation of "exceeds authorized access."  *T.H. Glennon Co. v. Monday*, 18-cv-30120-WGY, 2020 U.S. Dist. LEXIS 45917, at *27 (D. Mass. Mar. 17, 2020).  Nuance provides no explanation, however, why the Court should adopt the broad interpretation.  In light of established doctrine favoring narrow construction of statutes to avoid imposing criminal liability where there is ambiguity, a broad interpretation of the CFAA is not warranted.  *See id.* at *29-30 (citing *United States v. Nosal*, 676 F.3d 854, 859 (9th Cir. 2012) and *United States v. Gray*, 780 F.3d 458, 468 (1st Cir. 2015)).

## V.  THE COPYRIGHT ACT PREEMPTS NUANCE'S STATE LAW CLAIMS

Nuance argues that its trespass to chattels claim is directed to a right not covered by the Copyright Act as it relates to "web crawling," and that its conversion claim includes an "extra element" of unauthorized access.  Op. at 17-18.  Neither argument is persuasive.

6

Nuance cites *eBay* for the proposition that "courts have found a claim for trespass to chattels to be different in kind from a copyright infringement claim, and therefore not preempted." Op. at 17. *eBay* is not on point. The case analyzed a claim for trespass to chattels under California law, and Nuance has not explained how California law is applicable to a Massachusetts trespass to chattels claim. *See eBay Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069 (N.D. Cal. 2000). The case is also distinguishable on the facts. In *eBay*, the alleged unauthorized access related to robots accessing eBay's website approximately 100,000 times a day over several months, compared to the discrete number of logins and downloads alleged in the amended complaint. *Compare eBay*, 100 F. Supp. 2d at 1071, *with* Dkt. No. 102 ¶ 40.

Nuance's argument as to the conversion claim is similarly flawed. Citing another California case applying California law, Nuance argues that its conversion claim includes an "extra element" – unauthorized access or improper appropriation. Op. at 17-18 (citing *Glass Egg Digital Media v. Gameloft, Inc.*, 17-cv-04165-MMC, 2018 U.S. Dist. LEXIS 130219 (N.D. Cal. Aug. 2, 2018)). As explained in Omilia's motion to dismiss, the pleaded facts do not show that Omilia exceeded authorized access. *See* Dkt. No. 121, at 15-17. And Nuance provides no authority that conversion under Massachusetts law requires an "extra element" of unauthorized access or improper access. *Compare Glass Egg Digital Media v. Gameloft, Inc.*, 17-cv-04165-MMC, 2018 U.S. Dist. LEXIS 130219, at *17-19 (N.D. Cal. Aug. 2, 2018), *with Children's Hosp., Corp. v. Cakir*, 15-cv-13281, 2017 U.S. Dist. LEXIS 147123, at *7 (D. Mass. Sept. 12, 2017) (a claim for conversion under Massachusetts law requires a plaintiff to show "that (1) the defendant intentionally and wrongfully exercised control over property owned or possessed by the defendant; (2) the plaintiff was damaged; and (3) if the defendant legitimately gained

7

possession under a good-faith claim of right, the plaintiff's demand for the return of the property was refused.").

## VI. NUANCE HAS NO BASIS TO SEEK STATUTORY DAMAGES OR ATTORNEY'S FEES

Nuance claims that its request for statutory damages and attorney's fees is permitted "to avoid a later potential waiver argument," and to preserve the remedy for trial if facts demonstrate either (1) there was a break in the alleged infringement or (2) the alleged infringement was substantially different before and after the copyright registrations. Op. at 18. Nuance does not cite any case support for this proposition. Nor does Nuance plead any facts supporting either scenario or facts suggesting any claims accrued post-registration. *See Ez-Tixz v. Hit-Tix, Inc.*, 919 F. Supp. 728, 736 (S.D.N.Y. 1996) (where plaintiff's complaint alleged that infringement began prior to registration, dismissal of claims for statutory damages and attorney's fees was not premature); *Johnson v. Jones*, 149 F.3d 494, 506 (6th Cir. 1997) ("infringement 'commences' for purposes of § 412 when the first act in a series of acts constituting continuing infringement occurs.").

Allowing Nuance to "preserve" a remedy for trial that is unsupported by properly pleaded factual allegations is not appropriate. If this were the rule, any plaintiff could avoid dismissal based on unpleaded, speculative allegations. The correct approach is set forth under the Federal Rules: a party may, after discovery of supporting facts, and upon motion and for a showing of good cause, seek leave to amend the pleadings. *See* Fed. R. Civ. P. 15(a)(2). In the absence of supporting facts, Nuance's request for relief for statutory damages and attorney's fees must be dismissed.

## VII. NUANCE SHOULD NOT BE GRANTED LEAVE TO AMEND

Contrary to Nuance's claim that Omilia "offers no basis or explanation for why such dismissal should be with prejudice" (Op. at 19), Omilia did explain why the court should dismiss with prejudice: amendment would be futile (*see* Dkt. No. 121, at 1, 11). Nuance's November 2015 letter and the declaration of Dimitris Vassos, which Nuance has not rebutted, show that there is no material dispute of fact that Nuance knew, as early as November 2015, of the facts giving rise to its claim. Nuance's vague offer of "additional, more detailed facts" (Op. at 19) is not sufficient. *See Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 190-191 (1st Cir. 2006) (upholding dismissal with prejudice where plaintiff "alleged no new facts or argument to suggest that an amendment would have strengthened his case in the slightest"); *Allen v. Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (denying leave to amend is proper "when the movant presented no new facts but only new theories and provided no satisfactory explanation for his failure to fully develop his contentions originally").

## CONCLUSION

For the reasons set forth above and in Omilia's memorandum in support of its motion to dismiss, the Court should dismiss with prejudice Counts IX-XIII of Nuance's First Amended Complaint.

Dated: July 29, 2020						Respectfully Submitted,


							By */s/ Kevin C. Adam*_____

							Kevin C. Adam (SBN 684955)
							Daniel S. Sternberg (SBN 688842)
							WHITE & CASE LLP
							75 State Street, 24th Floor
							Boston, MA  02109
							(617) 979-9300
							Kevin.adam@whitecase.com
							Daniel.sternberg@whitecase.com

							Of Counsel:
							Dimitrios Drivas (*admitted pro hac vice*)
							Raj Gandesha (*admitted pro hac vice*)
							Stefan Mentzer (*admitted pro hac vice*)
							John Padro (*admitted pro hac vice*)
							WHITE & CASE LLP
							1221 Avenue of the Americas
							New York, NY  10020-1095
							(212) 819-8286
							ddrivas@whitecase.com
							rgandesha@whitecase.com
							smentzer@whitecase.com
							john.padro@whitecase.com

							Hallie Kiernan (*admitted pro hac vice*)
							WHITE & CASE LLP
							3000 El Camino Real
							Two Palo Alto Square, Suite 900
							Palo Alto, CA  94306
							(650) 213-0300
							hallie.kiernan@whitecase.com

							*Counsel for Omilia Natural Language Solutions, Ltd.*

## **CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on July 31, 2020, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5.4 (c). Any other counsel of record will be served by First Class U.S. Mail on this same date.

/s/ *Kevin C. Adam*
Kevin C. Adam