# IN THE UNITED STATES DISTRICT COURT FOR

# THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NUANCE COMMUNICATIONS, INC., <br><br> Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> OMILIA NATURAL LANGUAGE SOLUTIONS, LTD., <br><br> Defendant and Counterclaim Plaintiff. | **Case No. 1:19-cv-11438-PBS** <br><br> Leave to File Granted on August 6, 2020 |

## NUANCE COMMUNICATIONS, INC.'S SUR-REPLY TO DEFENDANT'S MOTION TO DISMISS COUNTS IX-XIII OF THE FIRST AMENDED COMPLAINT

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ...........................................................................................................1
II. ARGUMENT ...................................................................................................................1
    A. The Discovery Rule Applies to Nuance's Claims, Including its Copyright Claim ...................................................................................................................1
    B. Summary Judgment Is Inappropriate and Premature ...............................................3
    C. Nuance States a Claim Under the DMCA ................................................................4
    D. Nuance States a Claim Under the CFAA .................................................................5
    E. Nuance's State Law Claims Are Not Preempted ......................................................5
    F. Nuance's Prayer for Statutory Damages and Attorneys' Fees is Appropriate .........7
    G. Alternatively, Nuance Should Be Granted Leave to Amend ....................................7
III. CONCLUSION ................................................................................................................8

# TABLE OF AUTHORITIES

Page

**Cases**

*Backman v. Smirnov*,
  No. CIV.A. 08-11148-RGS, 2008 WL 4874949 (D. Mass. Nov. 12, 2008) .............................. 7

*Boston Int'l Music, Inc. v. Austin*,
  No. CIV.A. 02-12148-GAO, 2003 WL 22119228 (D. Mass. Sept. 12, 2003) .......................... 7

*eBay, Inc. v. Bidder's Edge, Inc.*,
  100 F. Supp. 2d 1058 (N.D. Cal. 2000) ............................................................................ 5, 6

*Facebook, Inc. v. Power Ventures, Inc.*,
  844 F.3d 1058 (9th Cir. 2016) .............................................................................................. 5

*Foman v. Davis*,
  371 U.S. 178 (1962) .............................................................................................................. 7

*Glass Egg Digital Media v. Gameloft, Inc.*,
  No. 17-CV-04165-MMC, 2018 WL 3659259 (N.D. Cal. Aug. 2, 2018) ................................ 6

*MOCA Sys., Inc. v. Bernier*,
  No. CIV.A. 13-10738-LTS, 2013 WL 6017295 (D. Mass. Nov. 12, 2013) .............................. 5

*Monsarrat v. Zaiger*,
  303 F. Supp. 3d 164 (D. Mass. 2018) .................................................................................... 2

*Nat'l Ass'n of Mfrs. v. Dep't of Defense*,
  138 S. Ct. 617 (2018) ............................................................................................................ 5

*Portfolioscope, Inc. v. I-Flex Sols. Ltd.*,
  473 F. Supp. 2d 252 (D. Mass. 2007) .................................................................................... 1

*President and Fellows of Harvard Coll. v. Micron Tech., Inc.*,
  230 F. Supp. 3d 46 (D. Mass. 2017) ...................................................................................... 7

*Ruiz v. Bally Total Fitness Holding Corp.*,
  496 F.3d 1 (1st Cir. 2007) ..................................................................................................... 2

*TCS John Huxley Am., Inc. v. Sci. Games Corp.*,
  No. 19 C 1846, 2020 WL 1678258 (N.D. Ill. Mar. 20, 2020) ................................................ 3

*Universal City Studios, Inc. v. Reimerdes*,
   111 F. Supp. 2d 294 (S.D.N.Y. 2000)……………………………………………………… 4

*VBConversions, LLC v. Exida LLC*,
   No. CV13-8306-PSG (JEMx), 2014 WL 12561086 (C.D. Cal. July 17, 2014) ........................ 1

*Warren Freedenfeld Assocs., Inc. v. McTigue*,
   531 F.3d 38 (1st Cir. 2008) …………………………………………………………….. 1

*Zamoyski v. Fifty-Six Hope Rd. Music Ltd., Inc.*,
   718 F. Supp. 2d 128 (D. Mass. 2010) ...................................................................................... 3

**Statutes**

17 U.S.C. § 1201(a)(3)(A) ................................................................................................................ 4

**Rules**

Fed. R. Civ. P. 8(a) ........................................................................................................................ 7

Fed. R. Civ. P. 9(b) ........................................................................................................................ 2

Fed. R. Civ. P. 56(c) ...................................................................................................................... 3

**I.      INTRODUCTION**

For the reasons set forth below, none of Omilia's arguments in its Reply alter the conclusion that its Motion to Dismiss should be denied in its entirety.

**II.     ARGUMENT**

   **A.    The Discovery Rule Applies to Nuance's Claims, Including its Copyright Claim**

In its Motion to Dismiss, Omilia argued that the mere fact that information about Omilia's unlawful downloads existed somewhere in a Nuance logfile made Nuance chargeable with "knowledge" of that information as of the date of Omilia's downloads. Mot. at 3. Nuance demonstrated that argument is legally erroneous, citing to *VBConversions, LLC v. Exida LLC*, No. CV13-8306-PSG (JEMx), 2014 WL 12561086 (C.D. Cal. July 17, 2014) and *Warren Freedenfeld. Assocs., Inc. v. McTigue*, 531 F.3d 38 (1st Cir. 2008). *See* Opp. at 5-8; *see also Portfolioscope, Inc. v. I-Flex Sols. Ltd.*, 473 F. Supp. 2d 252, 254 n.5 (D. Mass. 2007) (refusing to dismiss and applying the discovery rule where "discovery could show that Plaintiff in fact could not determine the nature of the allegedly infringing product until 2003" because "[g]ranting a motion to dismiss on a statute of limitations defense is appropriate when there is *no set of facts* which, if proven, could prevent the claim from being time-barred." (emphasis added)).

In its Reply, Omilia has retreated from that position (other than a single sentence merely repeating its conclusory assertion), and now argues mainly that Nuance's acknowledged then-suspicion that Omilia was mishandling licenses during its time as a Nuance reseller constitutes inquiry notice that *after* termination of the reseller agreement, Omilia illegally downloaded hundreds of Nuance files, including language packs for languages that had never been part of Omilia's reseller agreement with Nuance. In essence, Omilia's defense is tantamount to "you suspected we were doing some bad things, so you should have been on notice that we were doing a lot of other bad things too." *See* Reply at 3 ("Nor has Nuance pleaded how the information in the logfiles might have been concealed or difficult to learn, especially where Nuance had reason to investigate further – *i.e.*, the existence of a dispute between the parties that led to termination of

1

the 2011 agreement"). This is not the standard for inquiry notice under the discovery rule. *See Monsarrat v. Zaiger*, 303 F. Supp. 3d 164, 166 (D. Mass. 2018) ("The discovery rule for copyright infringement cases in the First Circuit is expressly tied to discovery of the 'conduct' in question.").

Nor does Omilia's approach follow Rule 12(b)(6)'s requirement that all reasonable inferences be drawn in the non-moving party's (*i.e.*, Nuance's) favor. *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007). Applicability of the discovery rule is not one of the few categories subject to Rule 9's heightened pleading standard. Fed. R. Civ. P. 9(b) (requiring particularity only "[i]n alleging fraud or mistake"). Therefore, all that is required is notice pleading under Rule 8.

Credited with all permissible inferences in its favor, Nuance's First Amended Complaint alleges facts sufficient to support the application of the discovery rule, and Omilia's motion should be denied.

Alternatively, although Nuance does not concede that any additional detail on these points is necessary to state a claim, Omilia itself has provided a road map to additional allegations that could be included in a further amended complaint to address its concerns. According to Omilia, more detailed factual allegations could include, for example:

- "[F]acts showing *why* [Nuance] could not have learned of the unauthorized download from the download log files in its possession." Reply at 3.
- "[H]ow information in the logfiles might have been concealed or difficult to learn" *Id.*
- Why Nuance did not have "reason to investigate further" concerning Omilia's unlawful post-termination downloads. *Id.*
- Why the November 15 letter from Dimitris Vassos (improperly offered as extrinsic evidence to Omilia's motion to dismiss) was unrelated to Nuance's claims in the First Amended Complaint. *See* Reply at 9.

Moreover, the reasonableness and scope of Nuance's investigation at the time should not be governed by impermissible hindsight analysis – now that Nuance has uncovered the evidence

2

of Omilia's downloads and brought them into the light of day, it may be hard to imagine that such widespread, egregious misconduct lay undiscovered in a logfile. Such hindsight is not the proper inquiry. *See TCS John Huxley Am., Inc. v. Sci. Games Corp.*, No. 19 C 1846, 2020 WL 1678258, at *5 (N.D. Ill. Mar. 20, 2020) (holding that a set of facts "which would only seem prescient in hindsight, [] may not have triggered the running of the statute of limitations.").

Accordingly, if Omilia's motion to dismiss is not denied outright, then in the alternative, Nuance should be given leave to amend.

### B.   Summary Judgment Is Inappropriate and Premature

Next, Omilia argues that summary judgment should be granted but that the Rule 56(a) standard for granting summary judgment, including the requirement that all factual inferences be drawn in favor of the nonmoving party, doesn't matter. Reply at 4.

Omilia's entire extrinsic submission relates to the license-reporting dispute acknowledged in both Nuance's original Complaint and its First Amended Complaint. That purported evidence is silent on the issue of Omilia's illegal downloads. To the extent it is even appropriate to consider such materials at this stage, there is clearly a dispute about the scope of any "notice" in 2015. Under the applicable Rule 56(a) standard (which Omilia dismisses as "beside the point"), all inferences must be drawn in Nuance's favor. Omilia relies on *Zamoyski v. Fifty-Six Hope Rd. Music Ltd., Inc.*, 718 F. Supp. 2d 128 (D. Mass. 2010) in support of its argument that "summary judgment is warranted" because "Nuance has not demonstrated that a genuine issue of fact exists." Reply at 4-5. But Omilia's reliance here confuses the summary judgment legal standard described in *Zamoyski*. Even Omilia's cited passage from *Zamoyski* explains, "[t]he non-moving party bears the burden of placing at least one material fact into dispute *after the moving party shows the absence of any disputed material fact*." Reply at 5 (quoting *Zamoyski*, 718 F. Supp. 2d at 130 (emphasis added)). As explained above, Omilia has failed to show the absence of a disputed material fact, so the burden remains with Omilia to first show that "there is no genuine issue as to any material fact." *Zamoyski*, 718 F. Supp. 2d at 130 (citing Fed. R. Civ. P. 56(c)). In the absence

3

of extrinsic evidence from Omilia that specifically relates to its illegal downloads, summary judgment on this issue is inappropriate and premature.

### C. Nuance States a Claim Under the DMCA

Tellingly, in its Reply, Omilia neither responds to Nuance's arguments regarding the statutory language nor addresses in any fashion the cases Nuance cited as holding that unauthorized use of passwords is a violation of § 1201(a). Instead, Omilia mischaracterizes Nuance's argument as suggesting that "any use of a password to access a technological system constitutes circumvention for purposes of § 1201, even where the password is intended to facilitate access." Reply at 5. In actuality, Nuance asserts that Omilia's use of a password *without permission* is circumvention prohibited by § 1201(a)(1)(A) of the DMCA. The DMCA explicitly defines circumvention as occurring "*without the authority* of the copyright owner." 17 U.S.C. § 1201(a)(3)(A). As a result, by definition, actions taken *with permission* are not circumvention, including the use of an authorized password. Nuance has never suggested otherwise.

Indeed, Omilia's argument reveals its fundamental misunderstanding of the role of permission in the DMCA. Omilia attempts to exclude from the definition of "circumvention" actions for which the copyright owner as part of its normal business sometimes gives permission, such as a password. However, by defining "circumvention" as an action taken "without … authority" the DMCA protects a copyright owner's efforts both (1) to implement "technological measures" that prevent access to a copyrighted work and (2) to selectively disable those technological measures with permission. For example, the technological measures described in *Universal City Studios, Inc. v. Reimerdes* could be avoided with permission by lawful DVD players, while decryption of DVD players without authority was circumvention. 111 F. Supp. 2d 294, 317 (S.D.N.Y. 2000). Under Omilia's view, the DMCA would only apply to actions for which the copyright owner never gives permission, excluding from the DCMA technology like DVD players and effectively reading the language "without authority" out of the definition of "circumvention." The Court should reject such an attempt to treat the language of the DMCA as

4

"surplusage." *Nat'l Ass'n of Mfrs. v. Dep't of Defense*, 138 S. Ct. 617, 632 (2018) ("As this Court has noted time and time again, the Court is obliged to give effect, if possible, to every word Congress used.").

### D. Nuance States a Claim Under the CFAA

Omilia tries to distinguish the many cases finding a CFAA claim to exist (under the narrow interpretation of the statute) when a former employee uses login credentials after termination of employment, arguing merely that the Nuance-Omilia relationship "was not an employer-employee relationship." Reply at 6. This cramped effort to distinguish the cases misses the point. These many former-employee cases (*see* Opp. at 15) establish that a CFAA claim exists for continued use of login credentials after the expiration of the relationship under which those credentials were issued. In that sense, use of those credentials post-termination is "without authorization." The fact that Omilia was a contractual reseller of Nuance products, rather than a Nuance employee, is not a distinction with a difference. These cases are fully applicable. Omilia also cites *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016), purportedly for the proposition that the "without authorization" prong applies to revoked or expired credentials only when permission has been "revoked explicitly." Reply at 6. But even *Facebook* makes clear that all that is required is that the defendant be "on notice that it is no longer authorized to access" the plaintiff's computers. *Id.* n.3. Even under this standard, termination of the 2011 Partner Agreement (FAC ¶ 30) placed Omilia on notice that it was no longer authorized to access Nuance's servers or to download Nuance products. Omilia does not argue otherwise.

Thus, as Nuance argued in its Opposition, Omilia's conduct is actionable under the CFAA under either the narrow or broad interpretations of the statute. *See* Opp. at 15 (citing *MOCA Sys., Inc. v. Bernier*, No. CIV.A. 13-10738-LTS, 2013 WL 6017295, *3 (D. Mass. Nov. 12, 2013)).

### E. Nuance's State Law Claims Are Not Preempted

Omilia argues that *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069 (N.D. Cal. 2000), the seminal case applying the ancient tort of trespass to chattels to computer intrusions,

is distinguishable because (a) it is based on California common law rather than Massachusetts common law, and (b) Omilia committed fewer break-ins to Nuance's servers than was at issue in *eBay*.  Neither argument is persuasive.

Concerning trespass to chattels, Omilia cites no authorities—either in its opening or reply briefs—that identify the elements of a claim for trespass to chattels.  *eBay* provides a simple statement of those elements: "(1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage to plaintiff."  *Id.* at 1069-1070.  Omilia does not argue that Massachusetts common law is any different; the copyright-trespass to chattels cases Omilia does cite are from the Fourth Circuit (finding only as to conversion) and Northern District of Illinois (reaching holding without analysis).  *See* Mot. at 19; Opp. at 17 n.13.  As the *eBay* court found, trespass to chattels does include extra elements and is not preempted by the Copyright Act: the "chattel" is the server or computer network, and the "trespass" is the unauthorized intrusion into that server or network.  Nuance has been injured thereby.  It does not matter whether the trespass occurred "only" hundreds of times, as with Omilia's misconduct, or hundreds of thousands of times, as was the case in *eBay*.

Regarding conversion, Omilia's arguments similarly fail.  First, in trying to distinguish *Glass Egg Digital Media v. Gameloft, Inc.*, No. 17-CV-04165-MMC, 2018 WL 3659259, at *6 (N.D. Cal. Aug. 2, 2018), Omilia gamely tries to shoehorn its CFAA argument (that it did not "exceed authorized access") into the extra element of *unauthorized* access.  Reply at 7.  This is all a clumsy attempt at sleight-of-hand, intended to conceal the fact that after termination of the 2011 Partner Agreement, Omilia lacked permission to keep downloading Nuance's software.  These downloads were undertaken *without permission*.  Further, Omilia completely ignores Nuance's argument and cited authorities that, to the extent the materials downloaded include (or are later argued by Omilia to include) non-copyrighted material owned by Nuance, the claim for conversion covers a subject matter different from Nuance's copyright infringement claim.  *See* Opp. at 18.

6

### F. Nuance's Prayer for Statutory Damages and Attorneys' Fees is Appropriate

Omilia separately seeks to dismiss, under Rule 12(b)(6), several items in Nuance's prayer for relief that relate to a claim for copyright infringement. Omilia cites no authority for the proposition that items in a prayer for relief are properly the subject of a Rule 12(b)(6) motion – the prayer for relief, on its own, does not purport to state a claim for relief. Omilia's only fallback is to suggest that, although Nuance has asserted a claim for copyright infringement, it has not alleged specific facts in that claim relating to circumstances under which statutory damages and attorneys would be recoverable. Or perhaps Omilia's argument is that Nuance should have inserted a separate count for each different theory of copyright infringement. Neither approach is required under Rule 8's notice pleading standards. Fed. R. Civ. P. 8(a). In any event, it would not be appropriate to "dismiss" items from a prayer for relief under Rule 12(b)(6). *See Backman v. Smirnov*, No. CIV.A. 08-11148-RGS, 2008 WL 4874949, at *3 (D. Mass. Nov. 12, 2008) (holding that a prayer for relief "will be addressed in the context of the ultimate disposition of the case, rather than prematurely on a motion to dismiss.").

### G. Alternatively, Nuance Should Be Granted Leave to Amend

Finally, even as it tries to "spin" and reinterpret the FAC's allegations, and even as it argues that additional, detailed, facts are missing from the FAC's allegations, Omilia argues for dismissal with prejudice on the ground of futility. But on this record, finding futility would be an extreme result, contrary to Rule 15's mandate that leave to amend should be freely granted. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff *may be* a proper subject of relief, [it] ought to be afforded an opportunity to test [its] claim on the merits." (emphasis added)); *see also President and Fellows of Harvard Coll. v. Micron Tech., Inc.*, 230 F. Supp. 3d 46, 47 (D. Mass. 2017) (granting leave to amend complaint following grant of motion to dismiss);[1] *Boston Int'l Music, Inc. v. Austin*, No. CIV.A. 02-12148-GAO, 2003

---

[1] When it granted Micron's motion to dismiss, the court granted Harvard 30 days leave to file an amended complaint. *President and Fellows of Harvard Coll. v. Micron Tech., Inc.*, No. 16-cv-11249-WGY, Dkt. No. 31 at p. 8 (D. Mass. Oct. 13, 2016) (transcript of motion to dismiss

7

WL 22119228, at *2 (D. Mass. Sept. 12, 2003) (after dismissal of complaint, "plaintiffs should be granted leave to amend the complaint to allege facts which may demonstrate that they have standing to assert their claim of copyright infringement").

### III.    CONCLUSION

For these reasons set forth above and in Nuance's memorandum in opposition to Omilia's Motion to Dismiss Counts IX-XIII of the First Amended Complaint, Omilia's motion to dismiss should be denied. Alternatively, any dismissal should be without prejudice and with leave to amend.

### REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1 (d), Nuance believes that oral argument may assist the Court and requests oral argument of this motion.

Date:  August 5, 2020         Respectfully submitted,

*/s/ Christian E. Mammen*
**WOMBLE BOND DICKINSON (US) LLP**

David Greenbaum (*admitted pro hac vice*)
**Nuance Communications, Inc.**
1111 Macarthur Boulevard
Mahwah, NJ 07430
(857) 214-5524
david.greenbaum@nuance.com

Jennifer Itzkoff (MA BBO No. 675694)
**WOMBLE BOND DICKINSON (US) LLP**
Independence Wharf
470 Atlantic Avenue, Suite 600
Boston, MA 02110
Telephone: (857) 287-3142
Jennifer.Itzkoff@wbd-us.com

---

hearing) ("Their motion to dismiss is going to be allowed with leave to Harvard, within 30 days, to file a motion for leave to file an amended complaint.").

Christian E. Mammen (*admitted pro hac vice*)
Carrie Richey (*admitted pro hac vice*)
**WOMBLE BOND DICKINSON (US) LLP**
1841 Page Mill Road, Suite 200
Palo Alto, CA 94304
Telephone: (408) 341-3067
Chris.Mammen@wbd-us.com
Telephone: (408) 341-3060
Carrie.Richey@wbd-us.com

Christine H. Dupriest (*admitted pro hac vice*)
**WOMBLE BOND DICKINSON (US) LLP**
271 17th Street, Suite 2400
Atlanta, Georgia 30363
Telephone: (404) 962-7538
Christine.Dupriest@wbd-us.com

Kristin Lamb (*admitted pro hac vice*)
**WOMBLE BOND DICKINSON (US) LLP**
811 Main Street, Suite 3130
Houston, TX 77002
Telephone: (346) 998-7843
Kristin.Lamb@wbd-us.com

***Attorneys for Plaintiff Nuance Communications, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that this document will be filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 6, 2020.

/s/ *Christian E. Mammen*
Christian E. Mammen